The question presented for the consideration of the Court is whether the courts and judges of this State have the right to issue writs of habeascorpus for the purpose of inquiring into the legality of the detention of persons held in custody by officers of the Confederate *Page 10 
States as conscripts, under certain acts of the Confederate Congress. The constitutionality of those acts has never been judicially questioned in this State, so that the only inquiry is that which I have just stated. My opinion is decidedly in favor of the jurisdiction of the State courts, and I will endeavor to state, briefly, the process of reasoning by which I have been conducted to this conclusion. In the exposition of my argument, it will be more convenient for me to show what were the power and authority of the courts of this State in relation to this matter while it was a member of the United States Government; for no one contends that they have less power and authority under the Confederate Government.
After the American Revolution, North Carolina was a sovereign and independent State. In virtue of that sovereignty and independence, she was vested with many and great powers and prerogatives, and had imposed upon her many and important duties. Among these duties none was higher than that of protecting all her citizens in the full and free enjoyment of life, liberty, and private property. Fully alive to this duty, she, in the fundamental organization of her government, (29) declared "that no freeman ought to be taken, imprisoned, or deprived of his freehold, liberties or privileges, or outlawed, or exiled, or in any manner destroyed or deprived of his life, liberty, or property, but by the law of the land." Declaration of Rights, sec. 12. And again: "That every freeman, restrained of his liberty, is entitled to a remedy to inquire into the lawfulness thereof, and to remove the same if unlawful, and that such remedy ought not to be denied or delayed." Ibid., sec. 13. To give a practical effect to these rights, courts were established and judges appointed. Had the State been powerful enough to continue to exist as an independent nation, nothing more would have been wanted to secure the protection of her citizens. But North Carolina, for causes not now necessary to be set forth, found it expedient to unite with other States similarly situated, for the purpose of forming a new and distinct government, and in doing so all these States were compelled to give up a portion of their former respective sovereignties, and to invest the newly created government with them. Hence the adoption of the Constitution of the United States, in which, after the enumeration of all the powers conferred on the General Government, it is declared that "the powers not delegated to the United States by the Constitution, nor prohibited by it to the States, are reserved to the States respectively, or to the people." See amendments to Constitution, Art. X. This article was indeed unnecessary, as the General Government had no powers except what the States had granted to it, either expressly or by a necessary implication; but it was, out of abundant caution, very properly adopted. *Page 11 
We are now to inquire whether the State gave up any portion of that sovereignty which was necessary to be retained for the purpose of enabling her to discharge the duty of protecting the personal liberty of her citizens.
As the courts and judges furnish the means through which that liberty is to be vindicated, let us see what authority or power has been taken from them. Alexander Hamilton, a member of the convention which framed the Constitution of the General Government, and (30) one of its ablest expounders, declared in No. 82 of the Federalist, p. 377: "That the States will retain all preexistent authorities which may not be exclusively delegated to the Federal head; and that this exclusive delegation can only exist in one of three cases: where a exclusive authority is in express terms granted to the Union; or where a particular authority is granted to the Union and the exercise of a like authority is prohibited to the States; or where an authority is granted to the Union, with which a similar authority in the States would be utterly incompatible. Though these principles may not apply with the same force to the judiciary as to the legislative power, yet I am inclined to think that they are, in the main, just with respect to the former as well as with the latter. And, under this impression, I shall lay it down as a rule that the State courts will retain the jurisdiction they now have, unless it appears to be taken away in one of the enumerated modes."
Chancellor Kent, 1 Com., 396, in remarking upon the rule as thus stated in the Federalist, says: "A concurrent jurisdiction in the State courts was admitted in all except those enumerated cases; but this doctrine was only applicable to those descriptions of causes of which the State courts had previous cognizance, and it was equally evident in relation to causes which grew out of the Constitution. Congress, in the course of legislation, might commit the decision of causes arising upon their laws to the Federal courts exclusively; but unless the State courts were expressly excluded by the acts of Congress, they would of course take concurrent cognizance of the causes to which these acts might give birth, subject to the exceptions which have been stated."
Among the causes of which the State courts had previous cognizance, none were more important than those in which they claimed the right to inquire, through the means of writs of habeas corpus, into the reasons for the imprisonment of persons alleged to be illegally restrained of their liberty. A jurisdiction so essential to the great privilege of going where one may please — a privilege which every citizen of (31) the State would wish to enjoy as freely as he did the air he breathed — the State courts would hardly have parted with except upon the most urgent necessity. As soon, then, as a citizen of the State was supposed to be illegally restrained of his liberty by an officer of the *Page 12 
General Government under color of a law of Congress, we might have expected that the State courts would promptly and anxiously inquire whether they had been deprived of their jurisdiction over the matter. They would ask, had it been taken away by an exclusive authority granted in express terms to the courts of the Union?
If, for instance, it were the case of a soldier unlawfully enlisted into the army, the answer would be in the negative. They would then ask, Was it a case where a particular authority was granted to the courts of the Union, and the exercise of a like authority prohibited to the courts of the States? The answer would be still in the negative. They would then ask, Was it a case where an authority was granted to the courts of the Union, with which a similar authority in the courts of the States would be utterly incompatible? That was considered to be a debatable question, and it was debated with great zeal and ability in almost every State of the Union for many years. The result was in favor of the jurisdiction of the State courts, and was thus announced by Chancellor Kent in the first edition of his Commentaries, and was so published in each successive edition of his work until his death. (See 1 Kent's Com., 400-401.)
"In the case of Ferguson (9 Johns., 239) an application was made to the Supreme Court of New York for an allowance of a habeas corpus
to bring up the party alleged to be detained in custody by an officer of the army of the United States, on the ground of being an enlisted soldier; and the allegation was that he was an infant and not duly enlisted. It was much discussed whether the State courts had concurrent jurisdiction by habeas corpus over the question of unlawful imprisonment, when that imprisonment was by an officer of the United States, by color or under pretext of authority of the United States. The Supreme (32) Court did not decide the question, and the motion was denied on other grounds, but subsequently, In re Stacy (10 Johns., 328), the same Court exercised jurisdiction in a similar case by allowing and enforcing obedience to the writ of habeas corpus. The question was, therefore, settled in favor of a concurrent jurisdiction in that case, and there has been a similar decision and practice by the courts of other States." See, also, Hurd on Habeas Corpus, Book 2, ch. 1, sec. 5, where many cases are stated which show the correctness of Chancellor Kent's assertion.
To the cases mentioned by Hurd may be added that of Mason, decided in this State, and reported 5 N.C. 336. The question of the compatibility of the jurisdiction of the State courts with that of the courts of the United States seems thus to have been proved exclusively by long experience of their harmonious action, and the general acquiescence of the country in it. *Page 13 
But it has been recently said that this is all a mistake, and that the decision of the Supreme Court of the United States in Ableman v. Booth, 21 How., 506, is directly opposed to the supposition of a concurrent jurisdiction in the courts of the State with those of the Federal Government. With the decision of that case I entirely concur; and I think that it is clearly shown in the opinion of the Chief Justice of this Court, filed in this case, that the remarks of Taney, C. J., in giving the opinion of the Supreme Court of the United States, cannot fairly be construed to sustain the doctrine contended for by the supporters of the exclusive jurisdiction of the Federal courts.
Another case recently decided by the Supreme Court of Alabama has also been invoked to the aid of those who opposed the concurrent jurisdiction of the State courts. The case is that of Ex parte Hill, decided at the last January term of the Court, and reported and published in pamphlet form by Mr. Shepherd, the reporter of the Court. An attentive examination of the case will show that though the decision of the Court is right, it cannot be used as an authority for the (33) purpose for which it has been cited. I will premise that the Court is composed of three judges, of whom only the Chief Justice, A. J. Walker, and Stone, judge, were present, the other judge, R. W. Walker, being detained at home by providential causes. The Court agreed in the conclusion that the judge whose action they were reviewing should not issue the writ of habeas corpus upon the petition before him. The Chief Justice put his opinion upon the ground of a want of jurisdiction in the courts of the State, but Judge Stone expressly said: "I withhold the expression of any opinion on all those cases in which the party, either by name or as one of a class or sect, stands absolutely and unconditionally exempt from conscription, without any other qualification than that he is of the given class: such, for example, as persons under the age of 18 years or over 45, officers judicial and executive of the Confederate and State Governments, etc." The judge then went on with his argument to show that the petitioner in the case before the Court was not exempt from conscription under the law of Congress. In doing so, it seems to me he, himself, as a member of the Court, was assuming a jurisdiction of the case. If he had the right to construe the act of Congress for the purpose of ascertaining that the party was not entitled to exemption, he had the same right to construe the act, if his construction led to the conclusion that the party was exempt. A power to construe the act at all involves, necessarily, a jurisdiction in the Court. If this be so, then the Court was equally divided upon the question of jurisdiction, and, therefore, there was no decision either way upon that question.
Another case reported in the same pamphlet, and, I suppose, decided at the same term, shows manifestly that the Court assumed and *Page 14 
exercised jurisdiction over the cause. The case is that of Ex parteStringer. The party being in custody as a conscript, applied for a writ of habeas corpus upon the ground that he was a regular member of the "Christian Church," and had conscientious scruples against bearing arms. Stone, J., delivered the opinion of the Court, in which it was (34) decided that the acts of Congress known as the "Conscription Laws" were constitutional, and that the petitioner did not come within any of the exemption clauses of those laws. The opinion closes thus: "As the opinion of the entire Court is not yet announced, nor indeed formed, on the broad question of the jurisdiction of the State courts in cases like the present, and as we feel no hesitation in refusing the present application on the merits, we place our refusal on the ground stated above. The prayer of the petitioner is denied."
If the Court had no jurisdiction of the cause, I should like to know how it acquired the power to decide the case upon its merits? From this examination, it is manifest, I think, that neither the Alabama case nor that of Ableman v. Booth has lessened in any sensible degree the weight of authority in favor of the concurrent jurisdiction of the State courts in cases like that now under consideration.
In closing this opinion, I will take occasion to return my thanks to the counsel on both sides for the aid which they have given to the Court by their able and well considered arguments.
Afterwards, the Court invited an argument from the bar upon this question: Whether this Court, as such, had the power to issue a writ ofhabeas corpus, and to determine the case in open court.