Kent, Ch. J.
The return is insufficient and bad upon the face of it. The writ was directed to Morgan Lewis, as commander of the troops’of the United States, at Sackett’s Harbour; and under his title of “ General of Division in the Army of the United States,” he simply "returns “ that the within-named Samuel Stacy, jun. is not in my custody.” This was evidently an evasive return. He ought to have stated, if he meant to excuse himself for the non-production of the body of the party, that Stacy was not in his possession or power. The case of The King v. Winton (5 Term Rep. 89.) is to this point; and the *336 observations and decision of the K. B. in that case are entitled to oUr deepest attention. That was the case of a habeas corpus. granted by a judge in vacation, and returnable immediately before him. The return by the person to whom the writ was directed was, that he had not the body of the party “ detained in his custodyand that return being filed in the K. B., an attachment, on a rule to show cause, was made absolute against the party for an insufficient return. Mr. Justice Grose, in giving his opinion, observed, “ that the courts always looked with a watchful eye at the returns to writs of habeas corpus; that the liberty of the subject essentially depended on a ready compliance with the requisitions of the writ, and the courts were jealous whenever an attempt was made to deviate from the usual form of the return, that the party had not the person in his possession, custody or power, and that it had not been adopted in that case, but an equivocal one substituted, and the words ‘ power and possession’ omitted.”
The accompanying return, in this case, of Torrey, the provost marshal, does, of itself, contradict the return of General Lewis; for he admits that Stacy is detained in his custody, under an order issued from the adjutant-general’s office, at Sacked’s Harbour, so late as the 24th of Jidy last. This order and the detention under it, we are bound to consider as the act of General Lewis, the commander at that station, and we are equally bound •to consider the prisoner as being in his possession, custody and. power.
• Here is, then, appearing on the very face of the return, a contempt of the process.
But this is not all. The affidavit of Butterfield, who served the writ, proves not only the fact, that Stacy was then in the custody, under the orders, and by the authority, of General Lewis, but that the direction of the writ wag intentionally dis- ' regarded.
The only question that can be made is, whether the motion for an attachment shall be granted, or whether there shall be only a rule upon the party offending, to show cause' by the first day of the next term, why an attachment should not issue. After giving •the c.ase the best consideration which the pressure of the occasion admits, I am of opinion that the attachment ought .to be Immediately awarded.
. The attachment is but process to bring in the party .to .answer *337 'ror the alleged contempt, and upon the present motion, we must act, as the courts have always, of necessity, acted, in like cases, upon the return itself, and the accompanying affidavits of the complainant.
This is a case which concerns the personal liberty of the citizen. Stacy is now suffering the rigour of confinement in close custody, at this unhealthy season of the year, at a military camp$ and under military power. He is a natural born citizen residing in this state. He has a numerous family dependent upon him for their support. He is in bad health, and the danger of a protracted confinement to his health, if not to his life, must be serious. The pretended charge of treason, (for upon the facts before us we must consider it as a pretext,) without being founded upon oath, and without any specification of the matters of which it might consist, and without any colour of authority in any military tribunal to try a citizen for that crime, is only aggravation of the oppression of the confinement. It is the indispensable duty of this court, and one to which every inferior consideration must be sacrificed, to act as a faithful guardian of the personal liberty of the citizen, and to give ready and effectual aid to the means provided by law for its security. One of the most valuable of those means is this writ of habeas corpus, which has justly been deemed the glory of the English law; and the parliament of England, as well as their courts of justice, have, on several occasions, and for the period, at least, of the two last centuries, shown the utmost solicitude, not only that the writ, when called for, should be issued without delay, but that it should be punctually obeyed. (See Brown’s Case, Cro. Jac. 543. and the stat. of 16 Car. I. c. 10. s. 8.) Nor can we hesitate in promptly enforcing a due return to the writ, when we recollect that, in this country, the law knows no superior; and that in England, their courts have taught us, by a series of instructive examples, to exact the strictest obedience to whatever extent the persons to whom the writ is directed may be clothed with power, or exalted in rank. On ordinary occasions, the attachment does not issue until after a rule to show cause; but whether it shall or shall not issue in the first instance, must depend upon the sound discretion of the court, under the circumstances of each particular case. It may, and it often does issue, in the first instance, without a rule to show cause, if the case be urgent, or the contempt flagrant. On this point the authorities are sufficiently explicit. (Rex v. Jones, Stra. 185. *338 Davies, ex dem. Povey, v. Doe, 2 Bl. Rep. 892. Hawk. tit Attachment, b. 2. c. 22. s. 1.)
If ever a case called for the most prompt interposition of tpe court to enforce obedience to its process, this is one. A military commander is here assuming criminal jurisdiction over a private citizen, is holding him in the closest confinement, and contemning the civil authority of the state. The parties are, also, at so great a distance, that no rule to show cause could be made returnable at this term; and if no good catise was shown at the next term, an attachment could not probably be issued from the city of New-York ivhere the court will then sit, and be returned the same term. Unless the attachment goes, the injured party may not feel the benefit of óur assistance until the ensuing winter. That delay would render the remedy alarmingly impotent. The case of Rex v. Earl Ferrers (1 Burr. 631.) is a precedent in point, for awarding the attachment in the first instance. In that case, a second writ of habeas corpus was issued, (the first writ not being obeyed without fault, as the party who sued out the writ, and who ivas the brother of Lady Ferrers, agreed not to prosecute it,) and not being obeyed, an" attachment was moved for, without a rule to show cause, and was granted. Lord Mansfield‘ observed, that “ the court may enforce speedy obedience to the- writ, and the circumstances of that case (where delay might be very dangerous) required it. And, therefore, the court thought, under the extraordinary circumstances of that case, an attachment should issue to enforce obedience to that writ of habeas corpus which so much affected the preservation and security of that lady.”
I am, for these reasons, of opinion that an attachment ought to issue.
Per totam Curiam;
Ordered that an attachment in this cause issue against General Morgan Lewis; but that the same be accompanied with a copy of this rule, which is to operate as instructions to the sheriff not to serve the same, if General Morgan Lewis shall forthwith, upon service of a copy of this rule upon him, discharge the said Samuel Stacy, jun. or shall cause him to be brought before Nathan fVilliams, Esq. commissioner, See. in obedience to the habeas corpus heretofore issued by him in this cause.