## Case No. 14,925.
### UNITED STATES v. DAVIS.
[4 Cranch, C. C. 606.] 1

Circuit Court, District of Columbia. Nov. Term, 1835.

WITNESS—MULATTO BORN OF WHITE WOMAN.

A mulatto born of a white woman, and not in a state of servitude by law, is a competent witness for a white man.

Circuit Court, District of Columbia. Nov. Term, 1839.

CONTEMPT—RETURN TO WRIT OF HABEAS CORPUS—SLAVES—PETITION FOR FREEDOM—SECURITY FOR FORTHCOMING OF PETITIONERS.

1. If the return to a writ of habeas corpus be evasive and insufficient, the party refusing to produce the bodies of the prisoners, if present in court, will be committed until he produce them, or be otherwise discharged.

[Disapproved in Re Jackson, 15 Mich. 430–441. Cited in Rivers v. Mitchell, 57 Iowa, 196, 10 N. W. 628.]

2. If, when produced, the prisoners appear to be held as slaves, and claim to be free, and file their petitions for freedom, the person claiming them as slaves will be required by the court to give security for their forthcoming to prosecute their claim for freedom; and if he fail to give such security, the court will order them to be taken into custody of the marshal for safe-keeping until their trial, or the further order of the court.

Habeas corpus ad subjiciendum, (issued on the 14th of January, 1840,) directed to Thomas N. Davis, commanding him to have before the court the bodies of Israel Brinkley, Emanuel Price, and Maria Course, persons of color, with the cause of their detention. The return of the writ by Davis stated upon oath, that he purchased the three negroes publicly, in the bar-room of Thomas Lloyd's tavern, in the city of Washington, as slaves for life, from one Joseph Woodall, on the 31st December, 1839, and took from him a bill of sale, warranting the title to the negroes, and that they were slaves for life, which bill of sale he produces as part of his return; that he paid for them the sum of $1,200, which he avers to be a reasonable price for them; that he had never any reason to doubt that they were slaves for life, as they were warranted to be. The undersigned avers that the said

1 [Reported by Hon. William Cranch, Chief Judge.]

individuals were removed, as he believes, beyond the District of Columbia, before the service of the said writs of habeas corpus, and before the undersigned heard of the existence of such process; and that the said individuals are now beyond the control and out of the custody of the undersigned, and, as he believes, beyond the District of Columbia. A number of witnesses were sworn and examined, whose testimony tended to show that Davis had removed the negroes, because he suspected that they would apply for a writ of habeas corpus.

Mr. Key, for the prisoners, contended that the answer was insufficient and evasive. It does not deny that the prisoners are in his power; or that he is unable to produce them.

Mr. Key, therefore, moved the court for an attachment against him, and cited Rex v. Winton, 5 Term R. 89. The sending the prisoners away with intent to avoid the expected process of this court, is of itself an obstruction of justice, and a contempt of court.

Mr. Hoban, contra, contended, that the return was a sufficient excuse for not bringing in the bodies of the prisoners, and cited Ex parte Stacy, 10 Johns. 328.

THE COURT (THRUSTON, Circuit Judge, absent), after stating the writs of habeas corpus and return, made the following order: "The court, having examined and considered the return of the said Thomas N. Davis, to the writs of habeas corpus aforesaid, and having heard counsel thereupon do adjudge the said answer to be evasive and insufficient, and that the said Davis is bound to produce the bodies of the said negroes, mentioned in the said writs, before the court; and the said Davis being now present in court, and refusing to produce the said negroes, it is therefore, this 16th day of January, 1840, ordered that the said Davis be committed to the custody of the marshal, until he shall produce the said negroes, or be otherwise discharged in due course of law."

On the 18th of January, 1840, it was further ordered by THE COURT, that, "in case the said Emanuel Price and Maria Course shall be surrendered by the said Thomas N. Davis, or by any other person for him, to the marshal, he shall take the said negroes into his custody, subject to the further order of the court, and that he then discharge the said Davis from jail."

The negro Israel Brinkley had run away, and had been taken up and lodged in jail in Baltimore. On the 20th of January, 1840, being the last day of the term, the said Davis having brought into court the negroes Emanuel Price, and Maria Course, THE COURT made the following order: "Emanuel Price and Maria Course being in court, and having filed their petition for freedom against a certain Thomas N. Davis, to March term next, and the said Davis being present in court,

and the court having required the said Davis to enter into recognizance, in the sum of $1,000, that he would not remove the said negroes out of the jurisdiction of this court, until their right to freedom shall be tried, and a decision thereon had, and the said Davis having refused to give such recognizance; it is therefore ordered that the said negroes be committed to the marshal of this district for safe-keeping, until the further order of the court in the premises." See Laws Md. 1796, c. 67, and Id. c. 43, § 5.

These negroes afterwards established their right to freedom, and were discharged; their jail fees being charged to the United States, and settled in the marshal's accounts.