AHRENS ET AL. *v.* CLARK, ATTORNEY GENERAL.

No. 446.   Argued March 29, 1948.—Decided June 21, 1948.

*James J. Laughlin* argued the cause and filed a brief for petitioners.

*Solicitor General Perlman* argued the cause for respondent. With him on the brief were *Assistant Attorney General Morison, Stanley M. Silverberg* and *Samuel D. Slade.*

Opinion of the Court by MR. JUSTICE DOUGLAS, announced by MR. JUSTICE REED.

The initial question presented in this case is the one we reserved in *Ex parte Endo,* 323 U. S. 283, 305, *viz.* whether the presence within the territorial jurisdiction of the District Court of the person detained is prerequisite to filing a petition for a writ of *habeas corpus.*

Petitioners are some 120 Germans who are being held at Ellis Island, New York, for deportation to Germany. Their deportation has been directed under removal orders issued by the Attorney General who has found that each of them is dangerous to the public peace and safety of the United States because he has adhered to a government with which the United States is at war or to the principles thereof. These removal orders were issued under Presidential Proclamation 2655 of July 14, 1945 (10 Fed. Reg. 8947) pursuant to the Alien Enemy Act of 1798, R. S. § 4067, 50 U. S. C. § 21. The orders are challenged by these petitions for writs of *habeas corpus* on several grounds, the principal one being that all of them exceed the statutory authority in that they were issued after actual hostilities with Germany ceased.

The petitions were filed in the District Court for the District of Columbia and alleged that petitioners were confined at Ellis Island, New York, and are "subject to the custody and control" of the Attorney General. Respondent moved to dismiss because, *inter alia,* petitioners were outside the territorial confines of the District of Columbia. The Court of Appeals dismissed an appeal from the order of the District Court granting the motion.

The statute, 28 U. S. C. § 452, provides:

"The several justices of the Supreme Court and the several judges of the circuit courts of appeal and of the district courts, within their respective jurisdictions, shall have power to grant writs of habeas

corpus for the purpose of an inquiry into the cause of restraint of liberty. A circuit judge shall have the same power to grant writs of habeas corpus within his circuit, that a district judge has within his district; and the order of the circuit judge shall be entered in the records of the district court of the district wherein the restraint complained of is had."

The question at the threshold of the case is whether the words "within their respective jurisdictions" limit the district courts to inquiries into the causes of restraints of liberty of those confined or restrained within the territorial jurisdictions of those courts. There are few cases on all fours with the present one, the precise question not having frequently arisen in the lower federal courts. But the general view is that their jurisdiction is so confined. *McGowan* v. *Moody,* 22 App. D. C. 148, 158 *et seq.; In re Bickley,* 3 Fed. Cas. 332. And see *In re Boles,* 48 F. 75; *Ex parte Gouyet,* 175 F. 230, 233; *United States* v. *Day,* 50 F. 2d 816, 817; *Jones* v. *Biddle,* 131 F. 2d 853, 854; *United States* v. *Schlotfeldt,* 136 F. 2d 935, 940.[1] Cf. *Sanders* v. *Allen,* 69 App. D. C. 307, 100 F. 2d 717; *Tippitt* v. *Wood,* 78 U. S. App. D. C. 332, 140 F. 2d 689. That is our view.

We start from the accepted premise that apart from specific exceptions created by Congress the jurisdiction of the district courts is territorial. See *Georgia* v. *Pennsylvania R. Co.,* 324 U. S. 439, 467–468, and cases cited. It is not sufficient in our view that the jailer or custodian alone be found in the jurisdiction.

Although the writ is directed to the person in whose custody the party is detained, 28 U. S. C. § 455, the statutory scheme contemplates a procedure which may bring the prisoner before the court. For § 458 provides

---

[1] But see *Ex parte Fong Yim,* 134 F. 938; *Ex parte Ng Quong Ming,* 135 F. 378.

that "The person making the return shall at the same time bring the body of the party before the judge who granted the writ." See *Walker* v. *Johnston,* 312 U. S. 275. It would take compelling reasons to conclude that Congress contemplated the production of prisoners from remote sections, perhaps thousands of miles from the District Court that issued the writ. The opportunities for escape afforded by travel, the cost of transportation, the administrative burden of such an undertaking negate such a purpose. These are matters of policy which counsel us to construe the jurisdictional provision of the statute in the conventional sense, even though in some situations return of the prisoner to the court where he was tried and convicted might seem to offer some advantages.

The history of the statute supports this view. It came into the law as the Act of February 5, 1867, 14 Stat. 385. And see Act of August 29, 1842, 5 Stat. 539. Prior to that date it was the accepted view that a prisoner must be within the territorial jurisdiction of the District Court in order to obtain from it a writ of *habeas corpus.* See *Ex parte Graham,* 4 Wash. C. C. 211; [2] *In re Bickley,*

---

[2] The principle which governed the decision was stated by Mr. Justice Washington as follows, 4 Wash. C. C. pp. 211–212:

"It is admitted that these courts, in the exercise of their common law and equity jurisdiction, have no authority, generally, to issue process into another district, except in cases where such authority has been specially bestowed by some law of the United States. The absence of such a power would seem necessarily to result from the organization of the court of the United States, by which two courts are allotted to each of the districts into which the United States are divided, the one denominated a district, and the other a circuit court. This division and appointment of particular courts for each district, necessarily confines the jurisdiction of these local tribunals within the limits of the respective districts within which they are directed to be holden. Were it otherwise, and the court of one district could send compulsory process into any other, so as to draw

192

3 Fed. Cas. 332. Cf. *United States* v. *Davis,* 5 Cranch C. C. 622. The bill as introduced in the Senate was thought to contain an infirmity. The objection was made on the floor that it would permit "a district judge in Florida to bring before him some men convicted and sentenced and held under imprisonment in the State of Vermont or in any of the further States." Cong. Globe, 39th Cong., 2d Sess. 730. As a result of that objection Senator Trumbull, who had charge of the bill, offered an amendment which added the words "within their respective jurisdictions." *Ibid.* at 790. That amendment was adopted as a satisfactory solution of the imagined difficulty.[3] *Id.* Thus the view that the jurisdiction of the District Court to issue the writ in cases such as this[4] is restricted to those petitioners who are confined or detained within the territorial jurisdiction of the court is supported by the language of the statute, by considerations of policy, and by the legislative history of the enactment. We therefore do not feel free to weigh the policy considerations which are advanced for giving dis-

---

to itself a jurisdiction over persons and things without the limits of its district, there would result a clashing of jurisdiction between the different courts not easily to be adjusted, and an oppression upon suitors too intolerable to be endured."

[3] The statute then read, "That the several courts of the United States, and the several justices and judges of such courts, within their respective jurisdictions, in addition to the authority already conferred by law, shall have power to grant writs of habeas corpus in all cases where any person may be restrained of his or her liberty in violation of the constitution, or of any treaty or law of the United States; . . ." 14 Stat. 385.

[4] We need not determine the question of what process, if any, a person confined in an area not subject to the jurisdiction of any district court may employ to assert federal rights. Cf. *Ex parte Betz; Ex parte Durant; Ex parte Wills; Ex parte Cutino; Ex parte Walczak; Ex parte McKinley;* and *Ex parte Murphy,* all reported together. 329 U. S. 672.

trict courts discretion in cases like this. If that concept is to be imported into this statute, Congress must do so.

Respondent is willing to waive the point, so that we may make a decision on the merits. But the restriction is one which Congress has placed on the power of the District Court to act. Hence it may not be waived by the parties. *United States* v. *Griffin,* 303 U. S. 226, 229.

*Ex parte Endo, supra,* p. 305, is not opposed to this view. In that case petitioner at the time suit was instituted was within the territorial jurisdiction of the *habeas corpus* court but had subsequently been removed to a different district and circuit. We held, in conformity with the policy underlying Rule 45 (1) of the Court, that jurisdiction of the District Court was not defeated in that manner, no matter how proper the motive behind the removal. We decided that in that situation the court can act as long as it can reach a person who has custody of the petitioner.

Since there is a defect in the jurisdiction of the District Court which remains uncured, we do not reach the question whether the Attorney General is the proper respondent (see §§ 455 and 458; *Wales* v. *Whitney,* 114 U. S. 564, 574; *Jones* v. *Biddle, supra; Sanders* v. *Bennett,* 80 U. S. App. D. C. 32, 148 F. 2d 19) and, if not, whether the objection may be waived, as respondent is willing to do. Cf. *Ex parte Endo, supra,* pp. 305–307.

*Affirmed.*

Mr. Justice Rutledge, with whom Mr. Justice Black and Mr. Justice Murphy join, dissenting.

The jurisdictional turn this case has taken gives it importance far beyond the serious questions tendered on the merits of petitioners' application. They are alien enemies interned during the war as dangerous to the nation's safety. They now seek to avoid deportation

from a country which takes care for personal liberties, even when its hospitality may be abused, to one which denied its own citizens such rights until its structure of tyranny fell in ruins. Whether or not petitioners have forfeited the right to continued enjoyment of our institutions and the life they foster, and whether the forfeiture has been declared and can now be executed pursuant to lawfully granted authority, are indeed important questions, upon which these petitioners are as much entitled to hearing and decision as Ludecke. Cf. *Ludecke* v. *Watkins, ante,* p. 160, decided today.

But the Court, putting them aside for these petitioners, cuts much more sweepingly at the roots of individual freedom by its decision upon the jurisdictional issue than could any disposition of those issues. The decision attenuates the personal security of every citizen. So does any serious contraction in the availability of the writ of *habeas corpus.* For the first time this Court puts a narrow and rigid territorial limitation upon issuance of the writ by the inferior federal courts. Heretofore such constrictive formulations have been avoided generally, even assiduously, out of regard for the writ's great office in the vindication of personal liberty. See, *e. g., Bowen* v. *Johnston,* 306 U. S. 19, 26–28; *Ex parte Endo,* 323 U. S. 283, 304–307; *Price* v. *Johnston,* 334 U. S. 266; *Wade* v. *Mayo,* 334 U. S. 672.[1]

But today's ruling, departing from that policy, is that the writ can issue only when the place of confinement lies within the limits of the court's territorial jurisdiction. That purely geographic fact and it alone determines the court's competence to act. And this is not merely as a matter of venue or of accommodation in the exercise of authority among tribunals of coordinate power, allowing room for some adaptability to varying circumstances. It is one crucial between competence to act and total impo-

---

[1] Cf. *Sunal* v. *Large,* 332 U. S. 174, dissenting opinions at 184, 187.

tence. All other considerations are put to one side. Neither the jailer's presence and amenability to process nor his ability or even his willingness to produce the body can cure the court's basic infirmity, if by accident or choice the locus of confinement happens to fall beyond the physical line.

If this is or is to become the law, the full ramifications of the decision are difficult to foresee. It would seem that a great contraction of the writ's classic scope and exposition has taken place,[2] and much of its historic efficacy may have been destroyed. For if absence of the body from the jurisdiction is alone conclusive against existence of power to issue the writ, what of the case where the place of imprisonment, whether by private or public action, is unknown? What also of the situation where that place is located in one district, but the jailer is present in and can be served with process only in another?[3] And if the place of detention lies wholly outside the territorial limits of any federal jurisdiction, although the person or persons exercising restraint are clearly within reach of such authority, is there to be no remedy, even though it is American citizens who are wrongfully deprived of their liberty and Americans answerable to no other power who deprive them of it, whether purporting to act officially or otherwise? In all these cases may the jailers stand in defiance of federal judicial power, and plead either the accident of the locus of detention outside the court's territorial limitations, or their own astuteness in so selecting the place, to nullify judicial competence?

---

[2] See text *infra* at note 5.

[3] Congress has not given the District Court power to direct service of the writ to be made outside the limits of the state in which the court sits, see *United States ex rel. Corsetti* v. *Commanding Officer of Camp Upton,* 3 F. R. D. 360, and it is at least questionable whether service on the turnkey would constitute service on the custodian. See *United States ex rel. Goodman* v. *Roberts,* 152 F. 2d 841.

To none of these questions does the Court give answer, although it purports to reserve decision concerning one of them. Yet in all, if power to act rests solely on the body's presence, its absence [4] will render the court impotent even though the jailer is within grasp of its process for compelling production and, it may be, beyond reach of the like process of any other court. For upon the test prescribed, there must be conjunction of the body's presence and the jailer's for the writ to issue. On the other hand, if relief can be given in such cases, where the conjunction does not exist, then it is not true that the federal courts have been stripped of power to afford it only when the body is held within the limits of their territorial jurisdictions, and the Court's grounding of this decision would seem neither necessary nor proper for disposition of the case.

By thus elevating the place of physical custody to the level of exclusive jurisdictional criterion, the Court gives controlling effect to a factor which generally has been regarded as of little or no importance for jurisdictional purposes or for the functioning of the writ in its great office as historically conceived. Perhaps the classic exposition of its nature and availability, as also of the character of the proceeding, is that of Judge Cooley, quoted in part with approval by our opinion in *Ex parte Endo, supra:*

> "The important fact to be observed in regard to the mode of procedure upon this writ is, that it is directed to, and served upon, not the person confined, but his jailer. It does not reach the former except through the latter. The officer or person who serves it ·does not unbar the prison doors, and set the prisoner free, but the court relieves him by compelling

---

[4] Further questions necessarily arise concerning matters of pleading and proof of presence necessary to establish the jurisdiction.

the oppressor to release his constraint. The whole force of the writ is spent upon the respondent . . . . The place of confinement is therefore not important to the relief, if the guilty party is within reach of process, so that by the power of the court he can be compelled to release his grasp. The difficulty of affording redress is not increased by the confinement being beyond the limits of the state, except as greater distance may affect it. The important question is, where is the power of control exercised?" [5]

---

[5] *In the Matter of Samuel W. Jackson,* 15 Mich. 417, 439–440. See *Ex parte Endo,* 323 U. S. at 306. At a later point Judge Cooley's opinion continued: "There is no inherent difficulty in the case; and the court of chancery, in the exercise of its power to compel specific performance, frequently exerts an authority over a subject matter in a foreign jurisdiction similar to that which is sought for here. I think the case presented by the petition is one in which we can give relief, and the decision in *United States v. Davis,* 5 *Cranch. C. C.* 622, is in point, and will warrant it. *There are no conflicting decisions. The incidental remarks which have been made in some cases about the remedy applying where the imprisonment is within the state, seem to me of no significance. In none of those cases was attention directed to this particular point . . . .*" (Emphasis added.) P. 441.

Some of the cases following this view are *Emerson* v. *Guthner,* 107 Colo. 83; *Crowell* v. *Crowell,* 190 Ga. 501; *Shaw* v. *Shaw,* 114 S. Car. 300; *Queen* v. *Barnardo,* 24 Q. B. D. 283; *In re Matthews,* 12 Ir. C. L. 233; and see cases cited in *Ex parte Endo,* 323 U. S. at 306. The same position is taken in Church, Habeas Corpus (2d ed.) § 109.

In the *Endo* case, although reserving the precise issue now decided, we said: "There are expressions in some of the cases which indicate that the place of confinement must be within the court's territorial jurisdiction in order to enable it to issue the writ. See [cases cited in note 16 *infra*]. But we are of the view that the court may act if there is a respondent within reach of its process who has custody of the petitioner. As Judge Cooley stated in *In the Matter of Samuel W. Jackson,* 15 Mich. 417, 439–440:" Then followed the matter quoted in the text ending with the words, "The whole force of the writ is spent upon the respondent;" together with citation of other authorities to similar effect. 323 U. S. 283, 306.

In this historic view the proceeding in *habeas corpus* is analogous jurisdictionally neither to one *in rem* or *quasi in rem* nor to the anomalously restricted personal action, as developed in the common law, of trespass to realty.[6] Yet the Court's decision gives to this prime remedy for invasion of personal liberty an availability in the inferior federal courts hardly greater than those highly restricted proceedings possess, jurisdictionally speaking, for purposes remedial of injuries to property. Those courts indeed are deprived of powers in *habeas corpus* which, as Judge Cooley pointed out in relation to state tribunals,[7] they may constantly exert with extraterritorial effects in the exercise of their general jurisdiction in equity.

This exaltation of the territorial element in jurisdiction, with such constrictive and potentially destructive consequences, the Court makes by reason of its conception of the meaning of the statutory phrase, "within their respective jurisdictions," 28 U. S. C. § 452; the legislative history of its insertion; and certain considerations of policy, relating especially to the production of persons detained by federal penal or other authorities in courts distant from the places of detention and thought to require the narrow reading given. I do not think these considerations compel so rigid a jurisdictional significance, or that this is necessary to avoid the evils the Court thus seeks to escape.

The jurisdictional problem as presented by the facts involves two questions. The first, the Court does not reach. But it is one I think basic to consideration of the other, a difference no doubt due to different emphasis

---

[6] See *Restatement, Conflict of Laws*, §.624 Special Note (Tent. Draft No. 5, 1929); see also Proposed Final Draft No. 2, Question Suggested for Discussion, § 624; Note, 28 Ky. L. J. 462.

[7] See note 5.

upon the territorial element in jurisdictional matters of this sort. The question is whether the Attorney General is a proper party respondent. The answer turns on whether the petitioners are in his custody [8] and thus are subject to his power of production. In my opinion they are.

The same principle which forbids formulation of rigid jurisdictional limitations upon the use of this prerogative writ in other respects, inconsistent with its availability for performing its office in varying circumstances, forbids limiting those who may be called upon to answer for restraints they unlawfully impose by technical niceties of the law of principal and agent, superior or subordinate in public authority, or immediacy or remoteness of the incidence of the authority or power to restrain. Jurisdictionally speaking, it is, or should be, enough that the respondent named has the power or ability to produce the body when so directed by the court pursuant to process lawfully issued and served upon him.[9]

There can be no question of the Attorney General's power to produce the petitioners in this case. For he is in complete charge of the proceedings leading up to the order directing their removal from the country; [10] indeed

[8] The statute provides that the "writ shall be directed to the person in whose custody the party is detained." Rev. Stat. § 755, 28 U. S. C. § 455.

[9] See cases cited in notes 5 and 17.

[10] The Executive Proclamation under which the Attorney General was acting provides that all alien enemies "who shall be deemed by the Attorney General to be dangerous to the public peace and safety of the United States because they have adhered to the aforesaid enemy governments or to the principles of government thereof shall be subject upon the order of the Attorney General to removal from the United States and may be required to depart therefrom in accordance with such regulations as he may prescribe." Proclamation 2655, 10 Fed. Reg. 8947. This proclamation was issued pursuant to the authority conferred by the Alien Enemy Act of 1798, 1 Stat. 577.

he claims to have complete discretion to decide whether or not removal shall be directed. In view of his all-pervasive control over their fortunes, it cannot be doubted that he is a proper party to resist "an inquiry into the cause of restraint of liberty" in their cases.[11]

Moreover, there can be no doubt of the Attorney General's amenability, in his official capacity, to process in the District of Columbia searching his official acts for lawful authority,[12] nor does he claim immunity in this respect.

The case therefore is one in which every requisite of jurisdiction, as the writ has been conceived historically, is present. The person having custody of the body has not only the ability but the authority to produce it. He is within reach of the court's process and amenable to it for that purpose. Indeed in this case he is willing to respond and, to that end, to waive any objection he might be entitled to make to the court's exercise of its power.[13] Unless therefore power is totally wanting by reason of petitioners' absence from the district, there is no insuperable obstacle to its exercise in this case. And as to this the Attorney General does not urge, he merely suggests, in view of certain dicta and decisions, see note 18, that the power may be lacking for that reason.

---

[11] Furthermore, as the Solicitor General points out in his brief, there is "no reason why the United States cannot waive this particular objection since it has the effect merely of permitting suit against one Government officer rather than another."

[12] See Fed. Rules Civ. Proc., 28 U. S. C. following § 723c, Rule 4 (f).

[13] Upon the facts the situation is one in which the Government quite properly desires a speedy determination upon the merits, in order to avoid the further delay necessarily incident to reaching them by further proceedings. Whether from the viewpoint of establishing the Government's power to remove the petitioners or of terminating the restraint upon their liberties, expedition of the determination is highly desirable.

If so, this can be only because the statutory wording, "within their respective jurisdictions," compels the Court's conclusion.[14]   The language, however, does not even purport to define "their respective jurisdictions" in terms of where the body restrained is held.   Indeed, it gives no indication that absence of the persons detained from the district which has personal jurisdiction of their custodian creates an insuperable jurisdictional defect, with the necessary consequence that if he is beyond reach of process issued by the courts where the body is held there can be no remedy by *habeas corpus* in any federal court.   On the contrary, the wording of the statutory phrase is as consistent with regarding "their respective jurisdictions" as attaching when the court acquires jurisdiction over the jailer by service of process within the limits of its territorial jurisdiction, even though the place of detention is elsewhere, as it is to invert those factors of territorial limitation in the manner of the Court's construction.

It is true that Congress, when it added the phrase, was concerned with the problem, or rather the possibility, that the inferior federal courts might abuse their power,

---

[14] The 1925 amendment to the statute providing that "the order of the circuit judge shall be entered in the records of the district court of the district wherein the restraint complained of is had" does not limit jurisdiction to grant the writ.   See *Ex parte Endo,* 323 U. S. 283, 307, n. 26.   The provision is a mere recording requirement applicable in terms only to circuit judges acting individually.   Appropriately it does not apply to courts as distinguished from judges because court orders would be recorded by routine procedure, whereas an order issued by a judge in vacation would require special treatment.   Since the application in this case was made to a court in session, the requirement does not apply here.   But even if it did apply, and even if a recording provision enacted in 1925 could be taken to relate back to the amendment of 1867 to give meaning to the words "within their respective jurisdictions," the wording "the district wherein the restraint complained of is had" could be taken as readily to mean "wherein the power of control is exercised" as "wherein the body is located."   Cf. the cases cited in notes 5 and 17.

in issuing the writ, by requiring the production of persons detained in distant places, with the effect of maladjustment in the exercise of authority as among the different federal courts. But it does not follow, as the Court concludes, that it sought to solve those problems in a manner that would deprive all courts of power to issue the writ except those sitting in the place of detention. As will appear, Congress was dealing with an even broader possibility for abuse, and while it sought to limit authority to issue the writ, there is nothing in the statutory language, the legislative history, or the problem of statutory authorization the amendment was introduced to solve, which shows that so narrow and rigid a restriction was contemplated.

To put the matter in proper perspective, before turning to the legislative history and the precise problem with which it was concerned, it is important to emphasize that the alternative to the Court's holding is not that petitioners have a right to be heard in a distant court whenever the Attorney General may there be served. Rather the alternative is that their absence from the district is a circumstance which normally would induce the court to exercise its discretion to decline jurisdiction, but which may be disregarded in exceptional circumstances if the respondent so desires or if the court finds that justice in the particular circumstances so demands.

Even though we start from the accepted premise that for this purpose the jurisdiction of the district court is territorial, see *Georgia* v. *Pennsylvania R. Co.*, 324 U. S. 439, 467–468, we should also recall, as has already been stated, that the Attorney General is within the territorial jurisdiction of the court in which these proceedings were instituted. It is within his power to terminate the restraint of petitioners' liberty without leaving the District of Columbia. In the sense stated by Judge Cooley, his

power of control is exercised within that District. We have no problem of issuing process to be served outside the District of Columbia such as might result in "a clashing of jurisdiction between the different courts not easily to be adjusted, and an oppression upon suitors too intolerable to be endured," and with which alone in my opinion the statutory phrase sought to deal.[15]

When the cases where both the custodian and his prisoner are outside the territorial jurisdiction of the court [16] are separated from those where the custodian is within the jurisdiction though the prisoner is elsewhere,[17] the weight of authority in the lower federal courts is opposed to the conclusion reached today.[18]   With the former class

---

[15] See *Ex parte Graham,* 4 Wash. C. C. 211, 212.   See note 2 of the Court's opinion.   In that case, as in most of the cases cited by the Court, the custodian and the prisoner were both outside the territorial jurisdiction of the court.   See notes 16, 17 and 18.

[16] *Ex parte Graham,* 4 Wash. C. C. 211; *In re Boles,* 48 F. 75; *Ex parte Gouyet,* 175 F. 230; *Ex parte Yee Hick Ho,* 33 F. 2d 360; *United States* v. *Day,* 50 F. 2d 816 (in this case the custodian did appear in court, but only·specially to challenge its jurisdiction); *Jones* v. *Biddle,* 131 F. 2d 853; *United States* v. *Schlotfeldt,* 136 F. 2d 935.

[17] *United States* v. *Davis,* 5 Cranch C. C. 622; *In re Bickley,* 3 Fed. Cas. 332, No. 1,387; *McGowan* v. *Moody,* 22 App. D. C. 148; *Ex parte Fong Yim,* 134 F. 938; *Ex parte Ng Quong Ming,* 135 F. 378; *Sanders* v. *Allen,* 69 App. D. C. 307, 100 F. 2d 717.   See *Tippitt* v. *Wood,* 140 F. 2d 689; *Burns* v. *Welch,* 159 F. 2d 29.

[18] Of the cases cited in note 17 only *McGowan* v. *Moody* and *In re Bickley* are in accord with today's decision.   And even those two cases are distinguishable.   In *McGowan* v. *Moody* the principal ground of decision seems to have been that the prisoner was not in the actual custody of the Secretary of the Navy.   See 22 App. D. C. at 163–164.   Moreover, the authority of that case is questionable in view of later decisions by the same court, see note 24 *infra*.   Although *In re Bickley* does rest on the ground that the court was not "competent to give the relief asked for" and uses the term "jurisdiction," it is well known that at that time the term "jurisdiction" was often

this case is not concerned. But, for reasons yet to be stated, it is with that class alone, in my opinion, that the phrase "within their respective jurisdictions" sought to deal. Moreover, other authorities have generally taken the position that jurisdiction over the custodian is sufficient regardless of the location of the party restrained.[19] In the light of this prevailing conception of the problem, we turn to the Court's reasons for departing from it.

Principal reliance is placed on the legislative history of the 1867 amendment. But this history neither requires nor, in my opinion, justifies the Court's view. It consists in a short statement by Senator Johnson, followed by brief colloquy, which led to insertion of the phrase. Cong. Globe, 39th Cong., 2d Sess. 730, 790, 899. It seems quite clear that he was concerned about a wholly different problem, arising from the bill's broad wording before the limiting phrase was introduced.[20] This was the possibility that the bill would confer power upon district judges to issue process against jailers in remote districts, and thus create departure from the usual rule, in *habeas corpus* cases as in others, that process does not run beyond the territorial jurisdiction of the issuing court. The Senator

used in the sense of "venue," and since the custodian did not waive the defect it was not necessary for the court to reach the precise issue adjudicated today. In fact the opinion intimates that the result would have been different if the point had been "freely conceded." See pp. 333–334.

[19] See note 5.

[20] The bill, prior to addition of the phrase, read pertinently as follows: "*Be it enacted, &c.,* That the several courts of the United States and the several justices and judges of such courts, in addition to the authority already conferred by law, shall have power to grant writs of *habeas corpus* in all cases where any person may be restrained of his or her liberty in violation of the Constitution or of any treaty or law of the United States . . . ." Cong. Globe, 39th Cong., 2d Sess. 730.

wished to make sure that the bill would not have that effect. And the underlying assumption of the entire discussion was that, without the limitation proposed, the bill's unlimited language might be taken to give authority to district courts to issue process to run throughout the country, comparable as was said to that exercised by justices of this Court, or even beyond its borders,[21] and thus to bring before them jailers without regard to distance.

It was this possibility which led to the proposal and acceptance of the amendment, not that a jailer within the court's jurisdiction, i. e., in reach of its process issued and served within its territorial jurisdiction, might detain the body outside those limits and be required to bring it before the court when ordered. Indeed there is not a word in the legislative discussion about the latter situation, or to suggest that it was the cause either of concern or of the amendment's inclusion. Neither Senator Johnson nor anyone else seems to have had in mind the situation where the locus of detention is in one jurisdiction and the jailer is present in another, amenable to its process.[22] It is this crucial fact which the Court's opinion and ruling ignore.

---

[21] When the amendment "within their respective jurisdictions" was suggested, Senator Johnson commented on it as follows: "The amendment proposed by the honorable chairman is entirely satisfactory to me. I suggested the necessity of an amendment the other day because I know that the late Chief Justice of the United States decided that under the laws as they stand process issued by a judge of the Supreme Court in cases where those judges have a right to issue process extends all over the Union. That I am satisfied might lead to a practical evil. The amendment proposed by the honorable chairman is entirely satisfactory to me and removes that difficulty." Cong. Globe, 39th Cong., 2d Sess. 790.

[22] The discussion of the amendment in the Senate was limited to the statements by Senator Johnson, quoted in part in note 21, and the remarks of Senator Trumbull, who introduced the amendment as a result of Senator Johnson's statement. See Cong. Globe, 39th Cong., 2d Sess. 730, 790.

Confining the running of the court's process to its territorial jurisdiction is of course a very different thing from confining its jurisdiction to cases in which the prisoner's body is located within those limits. Most importantly, it is one much less destructive of the writ's efficacy in cases where it may be most needed, and of the historic conception of the nature and scope of the proceeding. The amendment's terms are completely satisfied, are given their full and intended effect, if they are limited to the former object. So taken, they do no more than prevent the section's otherwise unlimited phrasing from authorizing process to run without territorial limitation, cf. *Georgia* v. *Pennsylvania R. Co., supra* at 467–468, and authorities cited; they do not trench upon the writ's classic availability or its utility as a prime safeguard of freedom. There is no hint in either the amendment's wording or in its legislative history that it had any such restrictive purpose or effect. The entire measure was adopted in fact, not to reduce, but to expand the writ's availability.[23]

In view of this history and its effect for the statute's meaning and purpose, the considerations of policy and convenience upon which the Court relies to bolster its view can have no proper influence to give that view validity. Indeed, if the legislative history were less clear than it is against the Court's conception, a due and hitherto traditional regard for the writ's high office should dictate resolving any doubt, as between the possible constructions, against a jurisdictional limitation so destruc-

---

[23] The Act of 1867 was an important liberalizing measure in two respects. Substantively, the statute authorized the issuance of the writ to relieve any detention in violation of the Constitution or laws of the United States. Procedurally, the remedy was extended to all persons in state as well as in federal custody. See Note, 61 Harv. L. Rev. 657, 659. "[N]o indication has been found of intent to narrow the act . . . ." *Ibid.*, n. 22.

tive of the writ's availability and adaptability to all the varying conditions and devices by which liberty may be unlawfully restrained.

Especially is this true since no such rigid restriction is necessary to provide adequate safeguard against the evils the Court envisages. It seems to proceed upon the assumption that if jurisdiction in the District of Columbia were admitted, federal prisoners thousands of miles away would have an unqualified right to invoke it.

On the contrary, if the Attorney General should not waive objection to proceeding in the District of Columbia as he has done here and there were no compelling reason for overriding his objection, such as the absence of any possible remedy elsewhere, the courts of the District clearly would have discretion to decline the exercise of their jurisdiction. Indeed, in the vast majority of such cases, where remedy would be available in a more convenient forum, it would be their duty to do so and an abuse of discretion, subject to correction upon review, for them to compel the petitioner's production in such an inconvenient or otherwise inappropriate forum. See *Beard* v. *Bennett,* 114 F. 2d 578, 580–581.

In this view it would be only the exceptional case of detention outside the District and pursuant to authority independent of its affairs, which would require or indeed permit the exercise of jurisdiction by its courts. On the other hand, in the situations where the District has a peculiar interest that its courts shall have power in such cases, namely, those affecting its penal institutions located outside its borders, they would not be deprived of jurisdiction, as the present decision consistently applied would seem to necessitate.[24]

[24] The District of Columbia Reformatory is located at Lorton, Virginia, and the District Workhouse is at Occoquan, Virginia. Persons are confined in these institutions for violations of the District of Columbia Code. The official in charge of both institutions is

The Court has reserved decision upon cases where the place of confinement is not within the territorial jurisdiction of any court.[25] And it has sought to distinguish *Ex parte Endo, supra.* I agree that the reservation and the distinction should be made. But I think the fact they have been found necessary goes far to destroy the validity of the present decision's grounding.

Cases of the type reserved have arisen recently on application for original writs of *habeas corpus* by petitioners detained by the military authorities in Germany and Japan. *Ex parte Betz; Ex parte Durant; Ex parte*

a resident of the District and maintains his headquarters in the District. For obvious administrative reasons, the Court of Appeals of the District of Columbia has therefore held that applications for *habeas corpus* may be filed in courts of the District by inmates of those institutions even though they are confined beyond its territorial jurisdiction. *Sanders* v. *Allen,* 69 App. D. C. 307, 100 F. 2d 717. See *Burns* v. *Welch,* 159 F. 2d 29. Under today's ruling such petitions must hereafter be filed in the Virginia federal court to the inconvenience of the parties and of the court, which must to a certain extent apply law peculiar to the District of Columbia.

It is of interest that the Court of Appeals reached this result in the face of the apparently inconsistent earlier holding in *McGowan* v. *Moody,* 22 App. D. C. 148. That case has been explained either on the ground that even though the court had jurisdiction it properly declined to exercise it because relief was available elsewhere, see *Sanders* v. *Allen,* 69 App. D. C. 307, 309, 100 F. 2d 717, 719, but cf. note 25 *infra,* or, at least by implication, on the ground that Secretary Moody was not a proper party respondent. See *Sanders* v. *Bennett,* 80 U. S. App. D. C. 32, 33, 148 F. 2d 19, 20, n. 2. Both of these grounds indicate that the Court of Appeals no longer regards *McGowan* v. *Moody* as authority for the proposition for which the Court cites it today.

[25] The logical inconsistency of this reservation with the decision is highlighted by the citation, apparently with approval, of *McGowan* v. *Moody,* 22 App. D. C. 148, where the court expressly assumed that if it had no jurisdiction, there would be no tribunal in which relief might be had. P. 158. In that case the petitioner sought relief against the Secretary of the Navy in behalf of a Marine imprisoned on Guam.

*Wills; Ex parte Cutino; Ex parte Walczak; Ex parte McKinley; Ex parte Murphy,* 329 U. S. 672. Some of those petitioners were citizens of the United States; some were civilians, others members of the armed forces. In some instances the detention was pursuant to sentences imposed by military tribunals for alleged offenses, death being the penalty in one. In other cases the petitioners claimed to be confined for indefinite periods without charge and without trial.

The jurisdictional questions raised by those petitions are of profound importance.[26] And if any of the reasons advanced for today's decision is deemed controlling, all such questions will be resolved in the future against such petitioners. Perhaps when those cases arise the Court will ignore the reasons relied on today, just as today it ignores the reasoning relied on in *Ex parte Endo.* For if absence of the body detained from the territorial jurisdiction of the court having jurisdiction of the jailer creates a total and irremediable void in the court's capacity to act, what lawyers call jurisdiction in the fundamental sense, then it is hard to see how that gap can be filled by such extraneous considerations as whether there is no other court in the place of detention from which remedy might be had and whether a rule of this Court, Rule 45 (1), can override a basic jurisdictional limitation Congress has imposed.

In any event, I cannot subscribe to the view that Congress has laid down a jurisdictional criterion so capricious in its consequences or so destructive of the writ's historic nature, scope and availability. As was stated at the beginning, the full ramifications of the decision are difficult to foresee. It is one thing to lay down a rule of discretion adequate to prevent flooding the courts of the

---

[26] See Wolfson, Americans Abroad and Habeas Corpus, 9 F. Bar J. 142.

District of Columbia with applications for *habeas corpus* from the country at large. It is entirely another to tie their hands, and those of all other inferior federal courts, with a strict jurisdictional limitation which can only defeat the writ's efficacy in many cases where it may be most needed.

Not the least important of these may be instances arising in the future where persons are wrongfully detained in places unknown to those who would apply for *habeas corpus* in their behalf. Without knowing the district of confinement, a petitioner would be unable to sustain the burden of establishing jurisdiction in any court in the land. Such a situation might arise from military detention, cf. *Duncan* v. *Kohanamoku,* 327 U. S. 304; *Ex parte Milligan,* 4 Wall. 2; *In the Matter of Samuel Stacy,* 10 Johns. 328; or as a result of mass evacuation of groups from a given area in time of emergency with consequent disruption of the means of keeping personnel records in order, cf. *Hirabayashi* v. *United States,* 320 U. S. 81; *Ex parte Endo, supra;* or possibly, though it is to be hoped not often, even from wilful misconduct by arbitrary executive officials overreaching their constitutional or statutory authority. These dangers may seem unreal in the United States. But the experience of less fortunate countries should serve as a warning against the unwarranted curtailment of the jurisdiction of our courts to protect the liberty of the individual by means of the writ of *habeas corpus.*

Accordingly, I dissent from the conclusion and judgment of the Court. Since I think the District Court had jurisdiction and since also the Attorney General has waived any objection to its exercise in this case, for reasons certainly not inadequate, I am also of the view that the case should be decided on the merits.