**UNITED STATES of America,**
**Plaintiff,**

v.

**George JOHNSON, Defendant.**
**Crim. No. 46006.**

United States District Court
E. D. New York.
June 28, 1962.

ZAVATT, Chief Judge.

The defendant pleaded guilty, on October 6, 1959, to a one count indictment charging him with unlawful possession of United States mail (containing a $132 New York State Unemployment Insurance check payable to one other than the defendant) in violation of 18 U.S.C. § 1708 which prescribes a maximum sentence of five (5) years. He appeared before the court for sentence on October 30, 1959. The defendant had a long prior criminal record, commencing with juvenile delinquency at ages 12, 13 and 14 including being a wayward minor at ages 17 and 18; United States mail theft at age 22; possession of a hypodermic needle and burglary at age 22; a second conviction for mail theft and forgery at age 26. He had been committed at age 14 to the New York State Training School for 16 months; had been committed to the Reception Center at Elmira, New York for 3 years; had been sentenced to 1 year for mail theft, which he served at the United States Federal Penitentiary, Danbury, Connecticut in 1953; had been sentenced to a term of 2½ to 5 years in Sing Sing; and, finally, in 1956 was sentenced to serve a term of 3 years by a judge of this court for mail theft and forgery. The defendant admitted these convictions imposed and jail terms served in open court on the day of and before the court imposed sentence.[1]

1. "THE COURT: Now, Mr. Johnson, before you are sentenced the Court wants to give you an opportunity to make any statement in your own behalf or present any information that you feel might be in mitigation of punishment.

"MR. LEWIS: If it please your Honor, I was assigned by your Honor to defend Mr. Johnson. We took a plea before Judge Rayfiel. I know he has a long criminal background, but most of it seems to involve the theft of checks. He is a young man. I hope that the fact that after pleading guilty in this particular case he now realizes the seriousness of his offenses and there may be a chance

of rehabilitation. I know the Probation Department has worked diligently on the case and has a very comprehensive report, and I ask your Honor to exert clemency in behalf of the defendant.

"THE COURT: How about you, Mr. Johnson, do you have any statement?

"THE DEFENDANT: Yes, I realize that I did what I did. I was fully aware of the consequences. I was not under the influence of narcotics at the time, but narcotics is the background basis for the theft. That seems to be my problem. I want the Court to consider that I have a problem—

"THE COURT: Well, you know, one of the things the Court relies on to a considerable degree is the probation report, the pre-sentence report. I happen to be among those who feel that you should know certain things that are in this report, not those things that are of such a confidential nature that if I revealed them to you it would dry up the source of information that we can go to, but you should know what this report states as to your prior convictions.

"Now, you have a long list of prior convictions according to this report, and I want to be sure that these are convictions of yours.

"When you were twelve years old, in August of 1942, you were brought to the Children's Court in Brooklyn as a juvenile delinquent and you were placed on probation; is that correct?

"THE DEFENDANT: Yes.

"THE COURT: When you were thirteen years old, in November of 1943, were you brought again before the Children's Court in Brooklyn as a juvenile delinquent and placed on probation?

"THE DEFENDANT: Yes.

"THE COURT: You say yes?

"THE DEFENDANT: Yes.

"THE COURT: When you were fourteen years old, in October of 1944, were you brought again to the Children's Court in Brooklyn as a juvenile delinquent and committed to the State Training School? You say yes?

"THE DEFENDANT: Yes.

"THE COURT: And how long were you in the State Training School?

"THE DEFENDANT: Sixteen months.

"THE COURT: Now, when you were seventeen years old were you brought to the Adolescent Court in Brooklyn in April of 1947 on the charge of stealing an automobile, grand larceny?

"THE DEFENDANT: Yes.

"THE COURT: You were found guilty or pleaded guilty?

"THE DEFENDANT: Pleaded guilty.

"THE COURT: Did you serve a term?

"THE DEFENDANT: No, sir. Just probation.

"THE COURT: You got a break.

"THE DEFENDANT: I was placed on probation.

"THE COURT: Now, when you were seventeen years old, in July of 1947, that is a month after you were placed on probation, were you again brought before the Adolescent Court of Brooklyn on a charge of rape?

"THE DEFENDANT: Yes, sir.

"THE COURT: And were you placed on probation then?

"THE DEFENDANT: The case was dismissed.

"THE COURT: You served how long?

"THE DEFENDANT: The case was dismissed.

"THE COURT: It says discharged here. I can't tell what that means. You say that was dismissed?

"THE DEFENDANT: Yes.

"THE COURT: Now, when you were eighteen years old you were again brought to the Adolescent Court in Brooklyn as a wayward minor and you were sentenced to three years and were sent to the reception center at Elmira.

"THE DEFENDANT: Yes.

"THE COURT: And then were you transferred from there to the New York State Vocational Institute at Coxsackie, New York?

"THE DEFENDANT: Yes.

"THE COURT: Were you paroled in October of 1950?

"THE DEFENDANT: Yes.

"THE COURT: Now, after that 1951 you were in the Felony Court, Brooklyn, again on another charge of grand larceny, the stealing of an automobile, but that was dismissed. Is that right?

"THE DEFENDANT: Yes.

"THE COURT: Two months later you were brought before the Night Court in Brooklyn on a charge of carrying a dangerous weapon, is that right?

"THE DEFENDANT: I don't remember that.

"THE COURT: All right.

"You say that you don't remember that. You deny that?

"THE DEFENDANT: Yes.

"THE COURT: When you were twenty-two years old in 1952, were you

brought into this court on the charge of mail theft?

"THE DEFENDANT: Yes, sir.

"THE COURT: And did you appear before Judge Rayfiel?

"THE DEFENDANT: Yes.

"THE COURT: And were you sentenced to a year?

"THE DEFENDANT: Yes, sir.

"THE COURT: And were you sent to the United States Public Health Hospital in Lexington, Kentucky?

"THE WITNESS: I was sent to Danbury.

"MR. PASSALACQUA: There was a recommendation but the Bureau of Prisons did not heed the recommendation of the Court.

"THE COURT: You were sent to Danbury?

"THE DEFENDANT: Yes.

"THE COURT: You were there how long?

"THE DEFENDANT: Approximately one year.

"THE COURT: Now, Danbury, as institutions go, is a pretty nice institution, isn't it?

"THE DEFENDANT: Yes.

"THE COURT: You were sentenced in January, 1953 and went to Danbury, is that right?

"THE DEFENDANT: Yes.

"THE COURT: Now, before that, before you were sentenced on this federal charge, were you brought to the Kings County Court in Brooklyn on a charge of possessing a needle and also burglary?

"THE DEFENDANT: Yes.

"THE COURT: Did you plead guilty?

"THE DEFENDANT: Yes, sir.

"THE COURT: In December of 1952, to attempted burglary?

"THE DEFENDANT: Yes, sir.

"THE COURT: Did you receive an indeterminate sentence of two and a half to five years at Sing Sing?

"THE DEFENDANT: Yes.

"THE COURT: Now, which did you serve first, the State sentence?

"THE DEFENDANT: Yes.

"THE COURT: Then you were turned over to the Federal authorities and you served your sentence at Danbury?

"THE DEFENDANT: Yes.

"THE COURT: How long did you serve in Sing Sing?

"THE DEFENDANT: Two and a half years.

"THE COURT: And then after that a year at Danbury?

"THE DEFENDANT: Yes.

"THE COURT: You were discharged in January of 1956, is that right?

"THE DEFENDANT: Yes.

"THE COURT: Is that when you got out?

"THE DEFENDANT: Yes.

"THE COURT: Now, the following month, February 1956, were you again in this court?

"THE DEFENDANT: Yes, sir.

"THE COURT: On the charge of mail theft and forgery, and did you appear before Judge Rayfiel?

"THE DEFENDANT: Yes, sir.

"THE COURT: And in May of 1956 did you receive a sentence of three years?

"THE DEFENDANT: Yes.

"THE COURT: Now, when that happened, what happened to you; did you serve the Federal sentence or were you sent back to the State authorities for the violating of parole?

"THE DEFENDANT: I served the Federal sentence.

"THE COURT: How long did you serve?

"THE DEFENDANT: 27 months.

"THE COURT: Three years?

"THE DEFENDANT: 27 months.

"THE COURT: Now you are married. You have an eight-year-old child. You are separated from your wife since—

"THE DEFENDANT: My wife is deceased.

"THE COURT: Were you first separated from her before she died?

"THE DEFENDANT: No. I was in jail at the time she died.

"THE COURT: But had you been separated?

"THE DEFENDANT: No, sir.

"THE COURT: Well, if there was a separation it was due to the fact that you were serving—

"THE DEFENDANT: Incarceration.

"THE COURT: Where is your child now?

"THE DEFENDANT: With my wife's mother.

"THE COURT: And who supports the child?

"THE DEFENDANT: I did it at times when I was out.

"THE COURT: Now, the report says that you have admitted that you used narcotics since 1949, is that right?

"THE DEFENDANT: Yes, sir.

"THE COURT: And as of the date of this report you admitted that the last injection of heroin that you had was in

On October 30th the court imposed sentence, a certified transcript of which is set forth.[2] On January 4, 1960, the court received the § 4208(c) [3] report

August of this year. Now, have you had any since then?

"THE DEFENDANT: No, sir.

"THE COURT: Where have you been since August?

"THE DEFENDANT: West Street.

"THE COURT: I am worried about you, Johnson. You are a young man only twenty-nine years old. In your short span of twenty-nine years you have spent an awful lot of time in jail and I don't know what will straighten you out. I would like to learn a little more.

"I would like to get some further study made of you to see if we can't prescribe the best medicine for you.

"Maybe the best medicine is a stiff jail sentence, I don't know. But I want to find out.

"Now, we have some new provisions in the law since last year under which, when a judge is in the quandary that I am in about you, that I can sentence you provisionally and commit you to the Attorney General to be studied and have them give me a report within three months, and then after I get that report, after studying it, decide then what the sentence ought to be. I am doing that because I would like to find some way of straightening you out, if you can be. I don't know whether you are beyond redemption. Maybe you are. If you are it is too bad at age twenty-nine, that a young man of your apparent intelligence is beyond redemption. But you are not doing anybody any good. You are not doing yourself any good. You are not doing your child any good. You are not doing your community any good. You are not doing your race any good. You are not doing anybody any good."

2 "THE COURT: Now, under this Section 4208(b), your lawyer knows this, but you don't, where the Court wants to have a further study made, what it does in the first instance is to prescribe the maximum sentence that is subject to the report, and then when the Court receives the report, it can leave the sentence at the maximum sentence; it can reduce the sentence, and impose any conditions that it wants to; it can even suspend sentence.

"Now, the maximum sentence you know for this offense of yours is five years.

"You have had three-year sentences and that has done you no good. So that you understand what I am doing, I am going to sentence you under this Section to five years and commit you to the Attorney General for study and a report.

"I get that report within three months. If they need further time, I can give them only another three months' time to make their study and report. And when I get that report, I can decide what the proper sentence will be for you.

"So the sentence of the Court, George Johnson, is that you be committed to the custody of the Attorney General or his duly authorized representative for study in accordance with Section 4208 (b) of Title 18 of the Code, and 4208(c) of the Code. That commitment to him for study by statute is deemed to be for five years. When I get the report, I will then decide finally what sentence is going to be imposed upon you.

"I would like, if it is possible, to give you just the right kind of medicine that you need to straighten you out. You are a repeater. If you want to continue your life this way, in and out of court all the time, and in and out of jail all the time,—is that what you want?

"THE DEFENDANT: No.

"THE COURT: Now, if you don't want that, I want to see what if anything is possible, I don't know. But I certainly want a very careful study and report of you. And that is the sentence of the Court."

3. § 4208 "(b) If the court desires more detailed information as a basis for determining the sentence to be imposed, the court may commit the defendant to the custody of the Attorney General, which commitment shall be deemed to be for the maximum sentence of imprisonment prescribed by law, for a study as described in subsection (c) hereof. The results of such study, together with any recommendations which the Director of the Bureau of Prisons believes would be helpful in determining the disposition of the case, shall be furnished to the court within three months unless the court grants time, not to exceed an additional three months, for further study. After receiving such reports and recommendations, the court may in its discretion: (1) Place the prisoner on probation as authorized by section 3651 of this title, or (2) affirm the sentence of imprisonment originally imposed, or reduce the sentence of imprisonment, and commit the offender under any applicable provision of law. The term of the sentence

and affirmed the sentence originally imposed on October 30, 1959, without requiring the presence of the defendant, who was then and is now incarcerated in the United States penitentiary at Lewisburg, Pennsylvania. The defendant now petitions the court, by a petition dated May 24, 1962, received by the court on June 5, 1962, for leave to petition, in forma pauperis, for a writ of habeas corpus. Habeas corpus is not a proper remedy in this case, since the petitioner is not now incarcerated in this District. United States v. Hayman, 342 U.S. 205, 72 S.Ct. 263, 96 L.Ed. 232 (1952); Ahrens v. Clark, 335 U.S. 188, 68 S.Ct. 1443, 92 L.Ed. 1898 (1948). Nevertheless, in order to avoid delay and circuity of action, the court will consider petitioner's claim for relief as a motion to vacate the sentence pursuant to 28 U.S.C. § 2255.

█ Petitioner contends that he was told by the court that he would be brought back to the court after it had received the § 4208(c) report. The transcript of what was said by the court on October 30, 1959 proves otherwise. Petitioner contends that he was denied his constitutional rights by not having been brought into court on January 4, 1960, when the court affirmed the sentence it had imposed on October 30, 1959. Giving the petition its most liberal and favorable interpretation, petitioner would appear to be contending that the court's action on October 30, 1959 was not the imposition of sentence; that the sentence was imposed upon petitioner, in absentia, on January 4, 1960 in violation of Rule 43, Federal Rules of Criminal Procedure, 18 U.S.C.[4]

The commitment of the defendant on October 30, 1959 was the imposition of sentence for the maximum term of imprisonment, to wit, five (5) years. Sentence was imposed on October 30, 1959 in the presence of the defendant, not on January 4, 1960 when the defendant was not in court. United States v. De Blasis, 177 F.Supp. 484 (D.Md.1959). In De Blasis, the sentence under § 4208(b) was deemed one for the maximum term of ten (10) years. After the sentencing judge received the § 4208(c) report and, in the absence of the defendant, he reduced the sentence to five (5) years to run from the date of the sentence originally imposed. The defendant petitioned in forma pauperis for a copy of the minutes

shall run from date of original commitment under this section.

"(c) Upon commitment of a prisoner sentenced to imprisonment under the provisions of subsection (a), the Director, under such regulations as the Attorney General may prescribe, shall cause a complete study to be made of the prisoner and shall furnish .to the board of parole a summary report together with any recommendations which in his opinion would be helpful in determining the suitability of the prisoner for parole. This report may include but shall not be limited to data regarding the prisoner's previous delinquency or criminal experience, pertinent circumstances of his social background, his capabilities, his mental and physical health, and such other factors as may be considered pertinent. The board of parole may make such other investigation as it may deem necessary.

"It shall be the duty of the various probation officers and government bureaus and agencies to furnish the board of parole information concerning the prisoner and, whenever not incompatible with the public interest, their views and recommendations with respect to the parole disposition of his case."

4. *"Rule 43. Presence of the Defendant*
"The defendant shall be present at the arraignment, at every stage of the trial including the impaneling of the jury and the return of the verdict, and at the imposition of sentence, except as otherwise provided by these rules. In prosecutions for offenses not punishable by death, the defendant's voluntary absence after the trial has been commenced in his presence shall not prevent continuing the trial to and including the return of the verdict. A corporation may appear by counsel for all purposes. In prosecutions for offenses punishable by fine or by imprisonment for not more than one year or both, the court, with the written consent of the defendant, may permit arraignment, plea, trial and imposition of sentence in the defendant's absence. The defendant's presence is not required at a reduction of sentence under Rule 35."

of his trial, claiming that he had been sentenced twice for the same offence; that the first sentence was for a term of only three months (this is the period of time within which a § 4208(c) report is to be made unless the court extends the time for a further period of three months) and that the second sentence was for a term of five (5) years. The court denied the petition, holding that his original commitment was deemed to be the imposition of a sentence to a term of ten (10) years and that the subsequent act of the court (upon receipt of the § 4208(c) report) was a reduction of that sentence, not requiring the presence of the defendant.

Rule 43, Federal Rules of Criminal Procedure, requires the presence of the defendant at the arraignment, every stage of the trial "and at the imposition of sentence, except as otherwise provided by these rules." 18 U.S.C. § 4208(b) [5] clearly indicates that a commitment under that section is the imposition of a sentence of imprisonment for the maximum term prescribed by law. It states the alternatives available to the sentencing judge, upon receipt of the § 4208(c) report. He may, in his discretion: "(1) Place the prisoner on probation as authorized by section 3651 of this title, *or (2) affirm the sentence of imprisonment originally imposed,* or reduce the sentence of imprisonment, and commit the offender under any applicable provision of law. The term of the sentence shall run from date of original commitment under this section."

5. This interpretation of 18 U.S.C. § 4208 (b) is in accord with that of the United States Department of Justice.
"*Interpretation of Public Law 85-752, 18 U.S.C. 4208(b).*
"Inquiries have been made regarding the necessity for a prisoner to be present in open court when final sentence is imposed based upon the reports and recommendations of the Bureau of Prisons as provided in 18 U.S.C. 4208(b). The legislative history (H.R.Report No. 1946) clearly indicates that it was the intention of Congress that the prisoner would not have to be present when final action on his sentence was taken.

Leave to proceed in forma pauperis is granted. In all other respects the petition, which the court treats as a motion pursuant to 28 U.S.C. § 2255 to vacate the sentence, is denied. This is an Order. The Clerk is directed to mail a certified copy thereof to the petitioner.

"This, of course, does not mean that the court, in its discretion, cannot order a prisoner's return for such proceedings and a defendant is always free to convince the sentencing court that such return is in the interest of justice. However, in view of the Congressional reports, the administrative burdens and the expense involved, the United States Attorney on his own initiative should not arrange for the defendant's production in court." United States Department of Justice, United States Attorneys Bulletin, Vol. 8, No. 1, p. 8.