**FLICK v. JOHNSON, Secretary of Defense, et al.**

No. 9883.

United States Court of Appeals District of Columbia Circuit.

Argued Dec. 16, 1948.

Decided May 11, 1949.

Messrs. George T. Davis, San Francisco, Cal., and Earl J. Carroll, Hayward, of the Bar of the Supreme Court of California, pro hac vice, by special leave of Court, with whom Mr. Fred W. Shields, Washington, D. C., was on the brief, for appellant.

Mr. John D. Lane, Assistant United States Attorney, Washington, D. C., with whom Mr. George Morris Fay, United States Attorney, Washington, D. C., was on the brief, for appellees.

Before STEPHENS, Chief Judge, and WILBUR K. MILLER and PROCTOR, Circuit Judges.

PROCTOR, Circuit Judge.

Appellant, a German citizen, is in custody in Germany, within the American Zone of Occupation. He is under custody of American Army forces, serving a sentence of imprisonment imposed by a tribunal sitting in said zone. A petition for writ of habeas corpus was filed in his behalf in the United States District Court for the District of Columbia. The Secretary of Defense, the Secretary of the Army, the Provost Marshal General and the Commanding General, United States Occupied Zone of Germany, were named as respondents. Upon a rule to show cause all answered except the Commanding General, who was not served. After hearing, the court discharged the rule and dismissed the petition "for lack of jurisdiction," in that petitioner was not confined within the territorial jurisdiction of the court. The decision 1948, 76 F.Supp. 979, rendered shortly before Ahrens v. Clark, 335 U.S. 188, 68 S.Ct. 1443, 92 L.Ed. 1898, was based upon McGowan v. Moody, 22 App.D.C. 148, approved in Sanders v. Allen, 69 App.D.C. 307, 100 F.2d 717; Sanders v. Bennett, 80 U.S.App.D.C. 32, 148 F.2d 19.

In the Ahrens case, the Supreme Court upheld denial of the writ upon the ground that the petitioners' confinement was not within the territorial limits of the federal court to which they applied. Their detention was, in fact, within the jurisdictional area of another district court. It is here argued that the broad language in the text of the majority opinion in that case is qualified by a marginal note 335 U.S. at page 192, 68 S.Ct. 1443, 92 L.Ed. 1898, reserving decision as to a case where confinement was beyond the territorial limits of any district court. The dissenting opinion so interprets the notation. This Court did likewise in an opinion filed April 15, 1949, in Eisentrager, et al. v. Forrestal, et al., 174 F.2d 961. There it is held that Germans in military custody in the American zone of occupation in Germany, serving sentences of a United States Military Commission, and thus in custody under or by color of the authority of the United States (28 U.S.C.A. § 2241, formerly 28 U.S.C.A. §§ 451, 452, 453), may sue for the writ in the District of Columbia,

naming as respondents officials at the seat of Government, through whose direction the actual jailer may be required to act. In view of that decision we shall not discuss a basic question, which naturally arises, i. e., whether the writ of habeas corpus is availble to an enemy alien on foreign soil.

This case presents an additional question of a fundamental character. Was the court which tried and sentenced Flick a tribunal of the United States? If it was not, no court of this country has power or authority to review, affirm, set aside or annul the judgment and sentence imposed on Flick. Hirota, et al., v. General of the Army Douglas MacArthur, et al., 69 S.Ct. 197. We must, therefore, inquire into the origin of the Flick tribunal and the source of its power and jurisdiction to determine whether it was a court of the United States.

Upon the surrender of Germany, the Four victorious Powers, the United States, Great Britain, France and Russia, completed military control of the conquered land. Agreeably to plan, the armies of each occupied a separate zone. It was agreed that supreme authority over Germany would be exercised, on instructions from their Governments, by the Commanders in Chief, "each in his own zone of occupation, and also jointly, in matters affecting Germany as a whole." At the same time a "Control Council" was constituted, composed of the four Commanders in Chief, as the supreme governing body of Germany. This plan of operation was expressly limited to the period of occupation "while Germany is carrying out the basic requirements of unconditional surrender." (That period has continued since, and still prevails.) Arrangements for the subsequent period were to be "the subject of a separate agreement." (Declaration of Berlin, June 5, 1945, 12 U. S. Dept. of State Bull. 1054.)

In support of the foregoing arrangement for the temporary government of Germany, the President of the United States, acting through his Joint Chiefs of Staff, directed the Commander in Chief of the American Forces in Germany, in his capacity as Military Governor of the American Zone of Occupation, to carry out and support, in that Zone, the policies agreed upon in the Control Council, whose authority "to formulate policy and procedures and administrative relationships with respect to matters affecting Germany as a whole will be paramount throughout Germany." This document confirms and reinforces the supreme authority with which the American Military Governor, in his capacity as Zone Commander, was clothed by the Council. (13 U. S. Dept. of State Bull. 596, October 17, 1945.)

In order to give effect to the terms of the Moscow Declaration of October 30, 1943, (9 U. S. Dept. of State Bull. 310) and the London Agreement of August 8, 1945, and the Charter issued pursuant thereto, (13 U. S. Dept. of State Bull. 222) and *"in order to establish a uniform legal basis in Germany for the prosecution of war criminals and other similar offenders, other than those dealt with by the International Military Tribunal, * * * "* [1] the Control Council enacted "Law No. 10," December 20, 1945 (15 U. S. Dept. of State Bull. 862 (1946). This act recognizes many crimes, which are classified and defined in broad terms. It prescribes punishment for those found guilty, and provides that "The tribunal by which persons charged with offenses hereunder shall be tried and the rules and procedure thereof *shall be determined or designated by each Zone Commander for his respective Zone."* [2] (Sec. 2, Art. III, C.C.Law No. 10, supra.)

The Moscow Declaration and the London Agreement, referred to above, proclaimed the intention of the United Nations to bring war criminals to justice. To that end the London Agreement provided for establishment *"after consultation with the Control Council for Germany"* [3] of an International Military Tribunal for the trial of war criminals whose offenses had no particular geographical location. It was this court which tried Goering and other high Nazi leaders. The Agreement expressly provided that it should not prejudice the jurisdiction or the powers of any national or *occupation* court established in any Allied territory or

---

[1] Italics supplied.
[2] Italics supplied.

[3] Italics supplied.

in Germany for the trial of war criminals. The annexed Charter dealt, inter alia, with the constitution of said International Military Tribunal; the crimes cognizable thereby; the rights of persons accused, and procedural methods in prosecution and trial of such persons before that Tribunal. This Charter became a pattern for Control Council Law No. 10, referred to above, under which was constituted the tribunal that tried and sentenced Flick.

Ordinance No. 7, Military Government— Germany, was promulgated October 18, 1946, pursuant to the powers of the Military Governor for the United States Zone of Occupation and *"pursuant to the powers conferred upon the Zone Commander by Control Council Law No. 10.* * * *"* [4] Its declared purpose was "to provide for the establishment of military tribunals which shall have power to try and punish persons charged with offenses recognized as crimes in Article II of Control Council Law No. 10, * * *" (Mil. Gov. Gazette—Germany—U. S. Zone, Issue B., 1 Dec. 1946, pg. 11.) Accordingly, it provided that each such tribunal should consist of three or more members, to be designated by the Military Governor, and laid down rules for the prosecution and trial of cases coming before those tribunals. Pursuant to the ordinance, General Clay, then Military Governor and Zone Commander, on April 12, 1947, constituted "Military Tribunal IV," designated the members thereof, and directed them to convene at Nuremberg, Germany, to hear such cases as might be filed by the Chief of Counsel for War Crimes. (General Orders No. 21, Headquarters, European Command, April 12, 1947.) This was the tribunal before which Flick was tried, convicted and sentenced upon an indictment filed by said Counsel. The same persons, designated by the Military Governor as members of Military Tribunal IV, were later named by the President to be members "of one of the several military tribunals etablished by the Military Governor for the United States Zone of Occupation within Germany *pursuant to the quadripartite agreement of the Control Council for Germany, enacted December 20, 1945, as Control Council Law*

*No. 10* * * *"* [5] (Executive Order 9858, May 31, 1947, 12 Fed.Reg. 3555.)

We should, perhaps, advert to the fact that the Commander in Chief of the American Forces, *who by virtue of that position served as a member of the Control Council and Zone Commander in the American Zone of Occupation,* and the Military Governor of said Zone acting as such by virtue of his rank as the Commanding General, were combined in the person of a single general of the United States Army. This accounts for the fact that in some of the documents referred to we may find these official titles, as they are used, confusing in relation to the subjects covered thereby. In these circumstances the nature of the act itself, rather than the title indicated by the document, will best serve to show the true capacity in which the officer was acting.

The foregoing summary brings out the salient facts bearing upon the status of Military Tribunal IV, which tried and sentenced Flick. He contends that it was not an international court, but an illegally constituted body, wrongfully exercising power as a military tribunal. The argument in support of this contention overlooks important facts. It pursues the form, rather than the substance of things. If the court was not a tribunal of the United States, its actions cannot be reviewed by any court of this country. Hirota v. MacArthur, supra. If it was an international tribunal, that ends the matter. We think it was, in all essential respects, an international court. Its power and jurisdiction arose out of the joint sovereignty of the Four victorious Powers. The exercise of their supreme authority became vested in the Control Council. That body enacted Law No. 10, for the prosecution of war crimes. It vested in the Commander for the American Zone the authority to determine and designate, for his zone, the tribunal by which accused persons should be tried and the rules and procedure to govern in such cases. Pursuant to that power, and agreeably to rules duly promulgated by Ordinance No. 7, the Zone Commander constituted Military Tribunal IV, under whose judgment Flick is now con-

---

[4] Italics supplied.

[5] Italics supplied.

fined. Thus the power and jurisdiction of that Tribunal stemmed directly from the Control Council, the supreme governing body of Germany, exercising its authority in behalf of the Four Allied Powers.

It follows that we cannot accept the argument that the sole authority for establishment of international courts for the trial of Axis war criminals was the London Agreement. That Agreement only provided for a tribunal (and, if necessary, other *identical* tribunals,) to be established, after "consultation" with the Control Council, for the trial of a special class of war criminals. (Art. 1.) The Agreement was without prejudice to "the jurisdiction or the powers of any national or occupation court established or to be established in any Allied territory or in Germany for the trial of war criminals." (Art. 6.) No similar tribunal was ever established under the London Agreement. We know that the only one which was established tried but the single case of Goering, et al.

Control Council Law No. 10, the basic authority for Military Tribunal IV, was enacted after the London Agreement. As heretofore shown, that law, in addition to defining war crimes, empowered each Zone Commander, for his zone, to designate the tribunals to try such cases and to determine the rules and procedure for such tribunals. It also provided that nothing therein should impair the jurisdiction of the International Military Tribunal established under the London Agreement. In connection with this proviso we should note that the declared purpose of Control Council Law No. 10 was to give effect to the London Agreement and "to establish a uniform legal basis in Germany for the prosecution of war criminals * * * *other than those dealt with by the International Military Tribunal,* * * * " [6] So we think there is no conflict between the two enactments. Rather do they complement each other. If, perchance, there be any point of conflict, it would seem that the terms of Law No. 10 should prevail, not only because it was enacted later, but by reason of these supporting circumstances: First, the President's Directive of October 17, 1945, (supra), issued through his Joint Chiefs of Staff to the Commanding General of the American Forces, recognizing the Control Council as the "supreme organ of control over Germany," and the American Commanding General as "clothed with supreme legislative, executive, and judicial authority" in the area occupied by his command, and Second, the President's nomination of the jurists who were designated by the Commanding General as members of Military Tribunal IV. (Executive Order, May 31, 1947, supra). Those acts of the Executive, in the exercise of his war powers, furnish strong support to the series of events culminating in the establishment of Military Tribunal IV.

Concededly, the International Military Tribunal, established under the London Agreement, was a court of international character. How, then, can it be said that Military Tribunal IV was not of the same character, with its existence and jurisdiction rooted in the sovereignty of the Four Powers, exercised jointly through the supreme governing authority of the Control Council? We think, therefore, that the tribunals established under its authority were legitimate and appropriate instruments of judicial power for the trial of war criminals. (See 39 Am.J. Int'l. Law, 1945, at pg. 525.)

Accordingly, we are led to the final conclusion that the tribunal which tried and sentenced Flick was not a tribunal of the United States. Hence the District Court was without power to review its judgment and sentence. Hirota case, supra. Therefore, the order of the District Court dismissing the petition for the writ is

Affirmed.

---

[6] Italics supplied.