## In re BUSH.

### No. 3544.

United States District Court
District of Columbia.

June 21, 1949.

George Morris Fay, United States Attorney, and John J. O'Leary, Assistant United States Attorney, both of Washington, D. C., for the motion.

Robert Ash, of Washington, D. C., and Curtis Bush, of Davenport, Iowa, opposed.

HOLTZOFF, District Judge.

This is an application by Arthur Bush, who is held as a prisoner in Japan pursuant to a sentence of a general provost court of the United States Army. He seeks a writ of habeas corpus to be directed to the Secretary of Defense, the Secretary of the Army, and the Chief of Staff of the United States Army. The respondents move to dismiss the petition, principally on the ground that the petitioner is not confined within the territorial jurisdiction of the Court and that they have no custody or control over him.

■ The undisputed facts are that the petitioner is a citizen of the United States who was arrested in Tokyo, Japan, on a criminal charge, tried by an American general provost court in that country, and sentenced to imprisonment. The first and the basic question to be determined is the nature and the status of the tribunal by which the petitioner was tried and convicted. It is a matter of history, of which this Court will take judicial notice, that when the Japanese armed forces surrendered to the armed forces of the United States, the American armed forces occupied Japan. They were under the command of General

Douglas MacArthur. On December 27, 1945, an agreement was reached between the Secretary of State and the corresponding officials of the United Kingdom and the Union of Soviet Socialist Republics, by which an international commission was established, known as the Far Eastern Commission. The principal function of that Commission is to formulate the policies, principles, and standards in conformity with which the fulfillment by Japan of its obligations under the terms of surrender may be accomplished. It should be observed that this agreement contains a provision to the effect that the Commission will respect existing control machinery in Japan, including the chain of command from the United States Government to the Supreme Commander and the Supreme Commander's command of occupation forces. There is also a provision to the effect that the United States Government shall prepare directives in accordance with policy decisions of the Commission and shall transmit them to the Supreme Commander through the appropriate United States Government agency.

█ The Government contends that General MacArthur acts in two capacities, one as the General in command of the American occupation forces, and the other as Supreme Commander of Allied Powers. The attitude of the Government is that in his second capacity he is not subject to the control of the Government of the United States, but is an international officer subject to the control of the Far Eastern Commission and the Allied Council for Japan. In view of the fact that this is a political matter, the Court is in duty bound to accept the view of the executive branch of the Government as to the dual status of General MacArthur. This circumstance, however, does not dispose of the problem here presented.

█ A document issued by the Far Eastern Commission on August 15, 1946, entitled "Policy Decision", provides that no criminal jurisdiction of any sort will be exercised by the Japanese courts with respect to nationals of members of the United Nations, but that such criminal jurisdiction will be exercised by military courts of members of the United Nations, as follows:

"In the case of a national of one of the occupying powers, by a military court of his nationality."

In other words, the Far Eastern Commission cedes whatever jurisdiction it may have and provides for the trial of criminal offenses committed by nationals of any of the occupying powers by military courts of the nationality of the accused. The situation is very similar to that under which this country exercised extraterritorial jurisdiction in China until a few years ago. China ceded to this country jurisdiction over American nationals accused of criminal offenses in China, and this country established an extraterritorial court there to exercise that jurisdiction. That court was a court of the United States, although sitting in China. Similarly we find that the Far Eastern Commission cedes to the United States authority to try its own nationals when accused of committing criminal offenses in Japan.

█ This Policy Decision was implemented by an order issued by General MacArthur as Supreme Commander of the Allied Powers on February 19, 1946. The order was directed to the General of the Eighth Army and the Commander of the Fifth Fleet and conferred upon them exclusive authority to establish within their respective commands military commissions and provost courts for all occupation forces in accordance with court-martial manuals and other appropriate directives. This order provides that in the case of a national of one of the occupying forces, jurisdiction over him shall be exercised by a court of his nationality and not by an international tribunal.

There is another document that is of importance in this connection, namely, a series of instructions issued by the Joint Chiefs of Staff to General MacArthur on December 19, 1945, which reiterate that criminal jurisdiction will be exercised by military courts of the United Nations, as follows:

"(b) In the case of a national of one of the occupying powers by a military court of his nationality."

The conclusion necessarily follows that a general provost court operating under these directives is not an international tribunal, but is a tribunal of the United States to which an international commission has ceded jurisdiction.

This conclusion brings this Court to two recent decisions of the Court of Appeals of this jurisdiction, the case of Eisentrager v. Forrestal, D.C.Cir.1949, 174 F.2d 961, and the case of Flick v. Johnson, D.C.Cir. 1949, 174 F.2d 983. The two cases should be read together. The Flick case involved a person sentenced in Germany by an international tribunal on which the United States had representatives. The Eisentrager case involved a person sentenced in Germany by a tribunal of the United States. In the Flick case, the Court of Appeals held that this Court has no jurisdiction to issue a writ of habeas corpus. In the Eisentrager case, it held that such jurisdiction exists. To be sure, the Eisentrager case was a far-reaching departure from pre-existing law, because it held probably for the first time in the history of the United States, that the United States District Court for the District of Columbia had authority to issue a writ of habeas corpus in behalf of a petitioner confined in a foreign country, if the respondents who had control over the petitioner were residents of and could be served within the District of Columbia. The Court of Appeals in that case summarized its ruling as follows:

"When a person is deprived of his liberty by the act of an official of the United States outside the territorial jurisdiction of any District Court of the United States, that person's petition for a writ of habeas corpus will lie in the District Court which has territorial jurisdiction over the officials who have directive power over the immediate jailer."

So long as it stands, the Eisentrager case is the law of this jurisdiction.

In view of the fact that the Court reaches the conclusion that the general provost court by which the petitioner was sentenced was a tribunal of the United States rather than an international tribunal, the motion to dismiss the petition is denied on the authority of the Eisen-

trager case. The Court will hear the matter on the merits, on the rule to show cause and the return thereto.