# United States Court of Appeals
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

———

Argued February 16, 2007          Decided April 6, 2007

No. 06-5324

MOHAMMAD MUNAF AND
MAISOON MOHAMMED, AS NEXT FRIEND OF MOHAMMAD
MUNAF,
APPELLANTS

v.

PETE GEREN, ACTING SECRETARY OF THE
U.S. ARMY, ET AL.,
APPELLEES

———

Appeal from the United States District Court
for the District of Columbia
(No. 06cv01455)

———

*Joseph Margulies* argued the cause for appellants. With him on the briefs were *Jonathan L. Hafetz*, *Aziz Z. Huq*, *Eric M. Freedman*, and *Susan L. Burke*.

*Gregory G. Garre*, Deputy Solicitor General, U.S. Department of Justice, argued the cause for appellees. With him on the brief were *Peter D. Keisler*, Assistant Attorney General, *Jeffrey A. Taylor*, U.S. Attorney, *David B. Salmons*, Assistant to the Solicitor General, *Douglas N. Letter*, Litigation Counsel, and *Lewis Yelin*, Attorney.

Before: SENTELLE, RANDOLPH and KAVANAUGH, *Circuit Judges*.

Opinion for the Court filed by *Circuit Judge* SENTELLE.

Opinion filed by *Circuit Judge* RANDOLPH, concurring in the judgment.

SENTELLE, *Circuit Judge*:  Mohammad Munaf, an American citizen, traveled to Iraq in 2005.  In October 2006 he was convicted on kidnapping charges and sentenced to death by the Central Criminal Court of Iraq ("CCCI").  He is being held, in Iraq, by United States military personnel serving as part of the Multi-National Force–Iraq ("MNF-I").  Munaf sought a writ of habeas corpus in the United States District Court for the District of Columbia, naming the Secretary of the Army and others as respondents.  Soon after Munaf's conviction by the Iraqi criminal court, the district court held that it lacked jurisdiction and dismissed the petition.  *Mohammed v. Harvey*, 456 F. Supp. 2d 115 (D.D.C. 2006).  Munaf appeals.  Constrained by precedent, we hold that the district court does not have the power or authority to entertain Munaf's petition and we therefore affirm.

Our result is required by the Supreme Court's decision in *Hirota v. MacArthur*, 338 U.S. 197 (1948), as that decision has been applied by this court in *Flick v. Johnson*, 174 F.2d 983 (D.C. Cir. 1949), and interpreted by *Omar v. Harvey*, No. 06-5126 (D.C. Cir. Feb. 9, 2007).  In *Hirota*, Japanese citizens sought permission to file petitions for writs of habeas corpus directly in the United States Supreme Court.  The petitioners were held in Japan, where they had been tried by a military tribunal authorized by General Douglas MacArthur acting as the Supreme Commander for the occupying Allied Powers.  *Hirota*, 338 U.S. at 198.  In a short per curiam opinion the Supreme

Court concluded that the sentencing tribunal "[was] not a tribunal of the United States" and held that "[u]nder the foregoing circumstances the courts of the United States have no power or authority to review, to affirm, set aside or annul the judgments and sentences imposed on these petitioners." *Id.*

*Flick* involved a habeas petition filed in the United States District Court for the District of Columbia by a German citizen held in Germany by American forces after he was convicted by a military tribunal. 174 F.2d 983. Relying on *Hirota*, we framed the jurisdictional question as follows: "Was the court which tried and sentenced Flick a tribunal of the United States? If it was not, no court of this country has power or authority to review, affirm, set aside or annul the judgment and sentence imposed on Flick." *Id.* at 984. Finding that the military tribunal was not a U.S. court, we held that the district court lacked jurisdiction to review Flick's habeas petition. *Id.* at 986.

Our recent decision in *Omar* involved a habeas petition filed on behalf of a United States citizen being held in Iraq by U.S. forces acting as part of the MNF-I. *Omar*, slip op. at 2. As in *Hirota* and *Flick*, *Omar* involved detention overseas and a multinational force. But unlike the petitioners in *Hirota* and *Flick*, Omar had not been charged or convicted by a non-U.S. court. We distinguished *Hirota* and *Flick* on this basis and went on to hold that the district court had jurisdiction to hear Omar's habeas claim. Slip op. at 12-14.

Unlike *Omar*, the instant case is controlled by *Hirota* and *Flick*. The MNF-I is a multinational force, authorized by the United Nations Security Council, that operates in Iraq in coordination with the Iraqi government. The CCCI is an Iraqi criminal court of nationwide jurisdiction and is administered by the government of Iraq; it is not a tribunal of the United States. Accordingly, the district court has no power or authority to hear

4

this case.

Munaf contends that *Hirota* and *Flick* do not control because, like Omar and unlike the petitioners in *Hirota* and *Flick*, Munaf is a United States citizen.[1]  *See, e.g.*, *Johnson v. Eisentrager*, 339 U.S. 763, 769 (1950) (describing citizenship as "a head of jurisdiction and a ground of protection").  But Munaf's citizenship does not take his case out of the ambit of *Hirota* and *Flick*.  *Hirota* did not suggest any distinction between citizens and noncitizens who were held abroad pursuant to the judgment of a non-U.S. tribunal.  Indeed, Justice Douglas wrote a separate opinion criticizing the *Hirota* majority for seeming to foreclose habeas review even for American citizens held in such circumstances. *See* 338 U.S. at 204-05 (Douglas, J., concurring) (1949).  In *Omar*, we held that "the critical factor in *Hirota* was the petitioners' convictions by an international tribunal."  Slip op. at 12.  We explained that, because *Hirota* "articulates no general legal principle at all," the decision is controlling as a matter of precedent if the circumstances important to the Court's decision are present here. *Id.* at 11.  As in *Hirota*, Munaf's case involves an international force, detention overseas, and a conviction by a non-U.S. court.  As we noted in *Omar*, conducting habeas proceedings in the face of such a conviction risks judicial second-guessing of a non-U.S. court's judgments and sentences, and we explained that *Hirota*'s repeated references to the petitioners' sentences "demonstrate[] that the Court's primary concern was that the petitions represented a collateral attack on the final judgment of an international tribunal." *Id.* at 12-13. Whether a habeas petition represents a collateral attack on a conviction by a non-U.S. court is not dependent on the petitioner's citizenship.  In light of the precedent established by *Hirota*, specifically as interpreted in

---

[1]Munaf was born in Iraq and was naturalized as a United States citizen in 2000.

*Flick* and *Omar*, American citizenship cannot displace the fact of a criminal conviction in a non-United States court and permit the district court to exercise jurisdiction over Munaf's habeas petition.

Munaf also argues that he does not challenge his conviction by the Iraqi court but rather the lawfulness of his detention at the hands of United States military personnel.  As with Munaf's citizenship argument, we do not think that *Hirota* and *Flick* can be distinguished on this ground.  In *Hirota* and *Flick*, as in this case, U.S. forces who were operating as part of a multinational force detained the petitioners.  And as in those cases, continued confinement is dependent on a conviction by a court not of the United States – specifically, a multinational tribunal in *Hirota* and *Flick* and, in this case, the CCCI, which is a foreign tribunal. The fact that the MNF-I is not an arm of the Iraqi government but rather cooperates with Iraq and its courts in matters of detention does not bring this case outside the scope of *Hirota*. Munaf states in his brief that "[e]ven if the Iraqi charges were dismissed tomorrow the United States does not suggest [Munaf] would be released."  But the district court's jurisdiction to inquire into such matters is precisely the issue; if the charges were dismissed, and United States forces were to continue to hold Munaf, this would be a different case.  Under *Omar* the district court arguably *would* have jurisdiction over Munaf's habeas claim.[2]  *See Omar*, slip op. at 14.

\* \* \*

One final point deserves emphasis.  In holding that the district court lacks jurisdiction, we do not mean to suggest that

---

[2] Munaf's conviction was automatically appealed to the Iraqi Court of Cassation.  At oral argument, Munaf's counsel stated that the status of that appeal is unclear.

6

we find the logic of *Hirota* especially clear or compelling, particularly as applied to American citizens. In particular, Hirota does not explain why, in cases such as this, the fact of a criminal conviction in a non-U.S. court is a fact of jurisdictional significance under the habeas statute. And as we acknowledged in *Omar*, the Supreme Court's recent decisions in *Hamdi v. Rumsfeld*, 542 U.S. 507 (2004), and *Rasul v. Bush*, 542 U.S. 466 (2004), are grounds for questioning *Hirota*'s continued vitality. *Omar*, slip op. at 9. But we are not free to disregard *Hirota* simply because we may find its logic less than compelling. "If a precedent of [the Supreme] Court has direct application in a case, yet appears to rest on reasons rejected in some other line of decisions, the Court of Appeals should follow the case which directly controls, leaving to [the Supreme] Court the prerogative of overruling its own decisions." *Id.* at 9 (quoting *Rodriguez de Quijas v. Shearson/American Express, Inc.*, 490 U.S. 477, 484 (1989)).

For the reasons discussed above, the judgment of the district court is

*Affirmed*.

RANDOLPH, *Circuit Judge*, concurring in the judgment:

I believe the district court had jurisdiction over Munaf's habeas corpus petition. The critical considerations are that Munaf is an American citizen and that he is held by American forces overseas. *Hirota v. MacArthur*, 338 U.S. 197 (1948) (per curiam), in which the habeas petitioners were Japanese citizens held in Japan, therefore does not apply. There is a longstanding jurisdictional distinction between citizens and aliens detained outside the sovereign territory of the United States. In *Johnson v. Eisentrager*, 339 U.S. 763, 781 (1950), decided two years after *Hirota*, the Court held that it lacked jurisdiction to issue writs of habeas corpus for German prisoners held by the United States in Germany. But the Court stated that its holding did not apply to American citizens, to whom the "Court long ago extended *habeas corpus*" when they were held outside the United States. *See id.* at 769-70 (citing *Chin Yow v. United States*, 208 U.S. 8 (1908)).

It is hardly surprising then that eight of the nine Justices in *Rasul v. Bush*, 542 U.S. 466 (2004), explicitly agreed that American citizens held by American officials overseas could invoke habeas jurisdiction. For himself and four other Justices, Justice Stevens wrote that "[a]liens held at the [Guantanamo Bay Naval] base, no less than American citizens, are entitled to invoke the federal courts' authority under [28 U.S.C.] § 2241." *Id.* at 481. Justice Scalia, joined by Chief Justice Rehnquist and Justice Thomas, stated that "[n]either party to the present case challenges the atextual extension of the habeas statute to United States citizens held beyond the territorial jurisdictions of the United States courts," "[a]nd *that* position – the position that United States citizens throughout the world may be entitled to habeas corpus rights – is precisely the position that this Court adopted in *Eisentrager* . . . even while holding that aliens abroad *did not have* habeas corpus rights." *Id.* at 497, 502 (Scalia, J., dissenting) (citation omitted).

It is true that *Omar v. Harvey*, No. 06-5126, slip op. at 12 (D.C. Cir. Feb. 9, 2007), distinguished *Hirota* and *Flick v. Johnson*, 174 F.2d 983 (D.C. Cir. 1949), on the ground that in both cases the alien petitioners held overseas had been convicted by an international tribunal.  But *Omar* did not speak to the jurisdictional issue confronting us here.  To extend *Hirota* to habeas petitions filed by American citizens not only would contradict *Eisentrager* and the majority and dissenting opinions in *Rasul*, but also would constitute an unwarranted extension of an opinion that "articulates no general legal principle at all," *Omar*, slip op. at 11.

Habeas petitions test the legality of detention.  The fact that the United States is holding Munaf because of his conviction by a foreign tribunal thus goes to the question whether he is entitled to the writ, not to the question whether the court has jurisdiction to consider the petition.  *See Bell v. Hood*, 327 U.S. 678, 681 (1946).  As to the merits, I believe *Wilson v. Girard*, 354 U.S. 524 (1957), is conclusive.  After Japan indicted a United States soldier for killing a Japanese woman in Japan, the soldier sought a writ of habeas corpus in the United States District Court for the District of Columbia to prevent his transfer to Japanese authorities.  *Id.* at 525-26.  The district court denied the writ on the merits but issued a preliminary injunction against the soldier's transfer.  *Girard v. Wilson*, 152 F. Supp. 21, 27 (D.D.C. 1957).  Referring to a Security Treaty between the United States and Japan, the Supreme Court upheld the denial of the writ but reversed the grant of the injunction, 354 U.S. at 530, reasoning that a "sovereign nation has exclusive jurisdiction to punish offenses against its laws committed within its borders, unless it expressly or impliedly consents to surrender its jurisdiction," *id.* at 529 (citing *The Schooner Exchange v. McFaddon*, 11 U.S. (7 Cranch) 116, 136 (1812)).  In Munaf's case, the Congressional Authorization for Use of Military Force Against Iraq, Pub. L. No. 107-243, 116 Stat. 1498 (2002), in

conjunction with United Nations Security Council Resolutions 1546, U.N. Doc. S/RES/1546 (June 8, 2004), and 1637, U.N. Doc. S/RES/1637 (Nov. 11, 2005), commands the same result. *Cf. Holmes v. Laird*, 549 F.2d 1211, 1219 n.59 (D.C. Cir. 1972).